**D. M. GATLIN and T. L. Dupriest**

v.

**MISSOURI–PACIFIC RAILROAD
COMPANY and United
Transportation Union.**

No. LR–76–C–30.

United States District Court,
E. D. Arkansas, W. D.

Sept. 5, 1979.

**1084**

Dale Price, Howell, Price, Howell, Little Rock, Ark., for plaintiffs.

David Orsini, Friday, Eldredge & Clark, James Youngdahl, Youngdahl, Larrison & Agee, Little Rock, Ark., for defendants.

## MEMORANDUM

EISELE, Chief Judge.

Pending before this Court are defendants' motions for summary judgment. The complaint in this case seeks review of a decision by Public Law Board No. 596, an arbitration board established under the Railway Labor Act, 45 U.S.C. § 153 (Second), upholding defendant employer's discharge of plaintiff employees. In addition, the complaint named the employees' union, and, without specifically alleging a violation by the union of its duty of fair representation, stated allegations concerning the union's conduct that arguably could be said to state such a fair representation claim.

Defendant employer claims, *inter alia,* that the suit is barred by the applicable statute of limitations. The Public Law Board issued its decision against the employees' grievance on October 6, 1971, at which time a cause of ·action, under 45

U.S.C. § 153(First)(q),[1] seeking judicial review of the decision accrued. An action seeking such review was filed in the Eastern District of Arkansas, docket number LR–73–C–263, on October 9, 1973, more than two years after the accrual of the cause. 45 U.S.C. § 153(First)(r) provides:

"All actions at law based upon the provisions of this section shall be begun within two years from the time the cause of action accrued under the award of the division of the Adjustment Board, and not after."

Plaintiffs' claim against the employer seeking judicial review of the board decision is therefore barred. The decision of the Board was binding and enforceable the very day issued, for it affirmed the status quo, and no period for adherence was necessary. Nothing was left for anyone to do on October 6, 1971; the award was final, and the disappointed plaintiff-employees' time for judicial review accrued under § 153(First)(q), not § 153(First)(p). Cf. *Joint Council Dining Car Employees Local 370 v. Delaware, L. & W. R. Co.*, 157 F.2d 417 (2d Cir. 1946).

■ In further support of this conclusion, it may be noted that the original lawsuit was non-suited by plaintiffs on August 25, 1975, and the instant case filed on January 19, 1976. A dismissal without prejudice leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought, and in the absence of a statute to the contrary, a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending. *See* 5 J. Moore, Federal Practice ¶ 41.05[2] at 41–76–77. Plaintiffs' effective delay in bringing this lawsuit was therefore over four years.

■ In the complaint, plaintiffs allege that, in addition to various claims concerning the course and conduct of the hearing by the board, or "hearing officer," the *union* acted improperly during the grievance process:

"4. Following this discriminatory hearing before Trainmaster Needham, the plaintiffs were dismissed from employment by the carrier for violation of General Rule Q and Rule 501(1), of the Uniform Code of Operating Rules, even though they had not been charged with violation of Rule 501(1). Plaintiffs' claims for reinstatement were successively appealed to the carrier's Superintendent, General Manager and Director of Labor Relations, without result. During the pendency of these appeals, the plaintiffs frequently but without result attempted to learn from the General Chairman of the Union something of the status of the appeals and advised him of their desire to present additional evidence in their respective claims. However, the General Chairman (not the incumbent in that position) consistently failed and refused to keep plaintiffs advised or to permit them to examine the records of their claims. On the one occasion when the plaintiffs were able to make an appointment with the General Chairman in Little Rock, he not only broke the appointment but when finally located by the plaintiffs was in an advanced state of intoxication and refused to talk to the plaintiffs at all. Following the denial of their claims for reinstatement by the carrier's Director of Labor Relations, the plaintiffs should have been afforded a choice of appealing to a Public Law Board or to the First Division of the Railway Adjustment Board; however, the UTU, acting by and through its then General Chairman, did not inform plaintiffs of their right to choice but arbitrarily docketed their appeals with Public Law Board 596. After plaintiffs were informed that their ap-

---

1. An award made by a special, or regional adjustment board, set up under 45 U.S.C. § 153(Second), is subject to the judicial review provisions applicable to the National Railroad Adjustment Board, as contained in 45 U.S.C. § 153(First)(p) and (q). *See Broth. of Ry., etc. v. Kansas City Terminal Ry. Co.*, 587 F.2d 903 (8th Cir. 1978); *Barrett v. Manufacturers R. Co.*, 326 F.Supp. 639 (E.D.Mo.1971), aff'd, 453 F.2d 1305 (8th Cir. 1972); *Transportation-Communication Employees Union v. St. Louis-San Francisco R. Co.*, 419 F.2d 933 (8th Cir. 1969), cert. den. 400 U.S. 818, 91 S.Ct. 34, 27 L.Ed.2d 45 (1970).

peals had been docketed with the Board, they repeatedly advised the then General Chairman of the Union that they wished to appear at the hearing before the Board in order to present evidence in their own behalf; however, the then General Chairman not only failed and refused to advise plaintiffs of the date of the hearing before the Board, but informed them that they had no right to appear and no right to present any evidence. Since neither the Board nor the carrier ever advised plaintiffs of the date of the hearing, the Union's failure and refusal to inform plaintiffs effectively denied plaintiffs of their right of notice and their right to be present and be heard and plaintiffs state that this action on the part of the Union amounted to a conspiracy between the Union and the carrier to deny plaintiffs their rights under the law."

No prayer for relief against the union was stated in the complaint, which itself is contrary to Rule 8(a)(3), requiring that a complaint shall contain "a demand for judgment for the relief to which he deems himself entitled." But the courts have recognized that the function of pleadings under the Federal Rules is to give fair notice of the claim asserted so as to enable the adverse party to answer and prepare for trial, and that function was served by the complaint in this case against the union. The union has answered the allegations against *it* and has moved for summary judgment on these matters, although it has not chosen to characterize the legal theory of the claims against it as involving allegations of a breach of the duty of fair representation. The union's response to and preparation for the allegations of the complaint in the context of a section 153 review arguably call for much less concern and attention than do the same factual allegations specifically addressed to a claim of a breach of the duty of fair representation. The union perhaps should be able to assume that it would not be faced with the defense of a fair duty

claim if such a claim was not otherwise raised within the limitations period, and that the allegations in the complaint against the union could easily be defended in the section 153 suit, with its extremely narrow standards of review. On the other hand, the union was put on notice of the essential facts, as stated above, and modern theories of pleading, of course, hold that a failure properly to characterize the legal theory of the wrong allegedly done should not put the plaintiff out of court.[2] Therefore, the complaint against the specific union conduct must be addressed by this Court.

▮ The statute of limitations for a breach of the duty of fair representation has been stated to best be derived from the most analogous *state* limitations statute, a matter of characterization that itself is a federal law question. This peculiar situation exists by virtue of the Congress' failure to prescribe a statutory limitations period, which would provide a very important link in the supposedly uniform chain of federal labor law and policy. The Eighth Circuit has recognized the difficulty of determining that characterization which, under the applicable state law, would best effectuate the federal labor policy at issue. *See Butler v. Local U. 823, Int. Bro. of Teamsters,* 514 F.2d 442, 446–48 (8th Cir. 1975). In particular, the Court in *Butler* recognized that either a tort or a contract characterization of the claim could be appropriate, depending on the precise circumstances and nature of the allegations in particular cases. One important factor cited by the Eighth Circuit was the desirability of having the limitations period for the fair representation claim be the same as that for any underlying breach of contract claim, so that the appropriate measure of damages against a union, and between a union and an employer, could be fairly ascertained and effected, without the risk of only one part of an overall integral claim being barred. Other courts have stressed that the characteriza-

---

**2.** It has been stated, however, that "undoubtedly cases can be imagined in which an alteration in legal theory would work to the prejudice of the opposing party in a way that cannot be

rectified by an appropriate court order." 5 Wright & Miller, Federal Practice and Procedure § 1219 at 145–46. This case does not present such a severe situation.

tion of a fair representation claim should *not* be influenced by any desire to have the *same* limitations period applicable to both the employer and the union. "In our view uniformity must yield to the results of proper characterization." *Price v. Southern Pacific Transp. Co.,* 586 F.2d 750, 753 (9th Cir. 1978).

In this Court's view, the principles of *Butler,* together with a reassessment of the logic and need for resorting to state statutes of limitations for fair representation claims in the particular context of union representation in arbitration proceedings under the Railway Labor Act, call for the establishment of a statute of limitations period of two years for the *particular type* of fair representation claim involved in this case. Under this limitations period, the plaintiffs' fair representation claim, as with their section 153 action, is barred.

■ In respect to many actions instituted in the federal courts, there are no specifically applicable federal statutes of limitations, and there is no general federal statute of limitations. Unless the action involved is one formerly denominated equitable, and the sole remedy is in equity, wherein federal law will govern the determination of the limitation period, then recourse must normally be had to state statutes of limitations. Mr. Justice Brennan, in concurring in *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 229, 78 S.Ct. 1201, 1206, 2 L.Ed.2d 1272 (1958), said with regard to previous cases applying state statutes of limitations in the absence of an applicable federal statute that the Court had four choices: "(1) No period of limitations at all; (2) an arbitrary period applicable in all like cases; (3) the flexible but uncertain doctrine of laches; and (4) state statutes of limitations. The state statutes were chosen by default." It is therefore clear that "The state statute is applied in the first place not as a matter of legal compulsion, but merely as a matter of convenience [when] there is no other period of limitation available." *Donaldson v. O'Connor,* 493 F.2d 507, 529 (5th Cir. 1974).

■ The union's duty of fair representation was not specifically imposed by statute but is a duty that the courts have created because of the important union member interests at stake in the union's discharge of its powers and responsibilities under the federal labor policy as enacted through comprehensive federal labor laws. *See generally Steele v. Louisville & Nashville R.R.,* 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The union's duty, substantively, is the same whether its activities are subject to the National Labor Relations Act (and other acts connected therewith) or the Railway Labor Act. But differences between the procedures under the two basic labor legislative schemes are important in considering the question of which state statute of limitations will best effectuate federal labor law policy. In *Butler, supra,* the Court's discussion of the problem of characterizing under state law a particular breach of the duty of fair representation illustrates the key problem in resorting to state law to determine an applicable, and necessarily varying, statute of limitations: the duty of fair representation does not have a truly satisfactory counterpart in most state laws; rather, it is a *sui generis* right and duty that frequently has the character of both tort and contract actions. At the same time, the adjudication of a claim concerning the duty of fair representation, after *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), implicates a broad range of labor law concerns that normally are afforded uniform treatment under the federal statutory schemes. As the Court noted in *Butler*:

"[T]he damages assessed against the union are inextricably tied to the breach of contract. If a court determined that the employer has not breached the contract, even if the union has breached its independent duty of fair representation, the employee will not be entitled to collect from the union damages flowing from the alleged contract breach. [*See Vaca v. Sipes,* 386 U.S. 171, 198 [87 S.Ct. 903, 17 L.Ed.2d 842].] [And] only by providing the same limitations period against both employer and union, will the court be

able to fashion a remedy which properly allocates the damages between them. . . . The goal of fairly apportioning damages will best be met by a rule which subjects both defendants to an equal period of vulnerability to suit. Finally, the retention of congruent jurisdiction over the unions will encourage them to represent employees fairly and completely in arbitration proceedings."

514 F.2d at 447–48.

■ Under the Railway Labor Act, of course, the relation between claims of contract breach and unfair representation in the presentation through arbitration of breach of contract claims is somewhat different than under the NLRA because under the former there is no section 301-type action for the judicial adjudication of contract claims. Rather, all contract claims are subject to mandatory, statutory arbitration, with extremely limited judicial review of the decision under 45 U.S.C. § 153(First)(p), (q). But under the rationale of *Hines,* the finality of such a decision nevertheless may be undermined by a breach of the union's duty of fair representation in the arbitral presentation of the contract dispute by the union, thereby necessitating remand of the dispute to the public law board for redetermination. In this way, the employer, without regard to any breach by it of the collective bargaining contract, is implicated in such a claim of a breach of the duty of fair representation and becomes a party indispensable to the effectuation of the proper remand relief. *See Curtis v. United Transportation Union,* Civil No. B–76–C–27 (E. D.Ark.). The employer is otherwise only susceptible to having its interest in the finality of the mandatory, statutory arbitration open to litigation for a period of two years following the decision, by the operation of 45 U.S.C. § 153(First)(r). This direct Congressional expression of the great interest in the finality of contract dispute arbitration under the Railway Labor Act is matched by its provision under section 153(First)(p), (q) for extremely limited judicial review of causes brought within those two years, as well as by the broad and absolute preclusion of adjudication of

contract claims under the RLA in any other forum. *See Andrews v. Louisville & Nashville R.R.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

■ It appears, therefore, that the best effectuation of federal labor policy would require, where possible, a statute of limitations that is both uniform among the states and uniform with the other implicated interests in labor law. This goal has been thought to be attainable only through an express Congressional enactment establishing a federal statute of limitations. At least in the labor law areas under the National Labor Relations Act, resort to supposedly analogous state law limitations periods have been the imperfect, but only available, course of action. The arbitrary creation of uniform statutes of limitations for federal actions by judicial fiat is not an appropriate judicial activity.

■ But under the RLA, it is not true that the statutory scheme is devoid of *any* Congressional expression with regard to the limitation of actions, and resort to supposedly analogous state law limitations periods is therefore not, by default, the only, and necessary, course. As the Supreme Court has stated, "[a]lthough state law is our primary guide in this area, it is not, to be sure, our exclusive guide. As the Court noted in *Auto Workers v. Hoosier Corp.,* 383 U.S. [696] at 706–707, [86 S.Ct. 1107, 1113, 16 L.Ed.2d 192] considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). In *Auto Workers,* although the Court held that resort to state limitations for actions under section 301 of the Labor Management Relations Act was proper, and that the application of a six year limitations period for a suit by a union under section 301 to recover a member's wages or vacation pay did not conflict with federal labor policy, the Court noted that a characterization of an action imposed by a state law limitations provision

may be rejected for application to a federal labor action if "that characterization is unreasonable or otherwise inconsistent with federal labor policy." 383 U.S. at 706, 86 S.Ct. at 1113. Further, the Court recognized that, even if a state law characterization otherwise seems to be a reasonable description of the federal cause, the state law may not be applied if the state law requires "an unusually short or long limitations period." 383 U.S. at 707 n. 9, 86 S.Ct. at 1114. And in *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977), the Supreme Court refused to apply state statutes of limitations to EEOC enforcement actions under Title VII, noting that "the Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies. . . . State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of the federal statute."

In this case, it may reasonably be concluded that federal labor policy is strongly geared to a quite limited period for the attack of a statutory arbitration under the Railway Labor Act. To the extent that a claim of a breach of the duty of fair representation involves the potential undermining of such an arbitration (because it involves a claim that the union's breach of the duty was in the conduct of the arbitration), then the need for uniformity on a national level to effectuate the Congressional policy of the two year limitation period under section 153(First)(r) dictates that *that* type of fair representation claim must also be brought within two years. Such a result does not mean that state law limitations periods should not be followed for *other types* of fair representation claims in the context of union activities otherwise covered by the Railway Act or for any fair representation claims in the context of un-

ion activities covered by the National Labor Relations Act, and related statutes. But the nature of the federal right in the particular context now before us is such that greatly varying limitations periods under strained state law analogies, exposing the statutory, Railway Labor Act arbitration decisions to substantive undermining for periods well in excess of the normal two year period of vulnerability, is inconsistent with our perception of Congress' intent and cannot be allowed to undermine the overall federal legislative policy in this rather limited, but important, area.

Judgment of dismissal will therefore be entered.