**INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, LOCAL NO. 670, and Charles Hill, Plaintiffs-Appellants,**

v.

**KERR–McGEE REFINING CORPORATION, Defendant-Appellee.**

No. 78–1679.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 24, 1980.

Decided March 24, 1980.

David W. Kisner, Oklahoma City, Okl., for plaintiffs-appellants.

Carolyn G. Hill, Oklahoma City, Okl. (Charles W. Ellis of Ellis, Frates & Shotts, and Curtis B. Hendricks, Oklahoma City, Okl., with her on the brief), for defendant-appellee.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

SETH, Chief Judge.

This appeal was taken from an order vacating an arbitration award. The appellant had been discharged for excessive absenteeism and for making false statements to obtain sick leave. Arbitration was had following the filing of a grievance and suit was then brought by the appellants to enforce the award [29 U.S.C. § 185(a)]. The court held for the employer and this appeal followed.

Appellant Hill was an employee at Kerr-McGee. He was represented by appellant International Union of Operating Engineers, which had entered into a collective bargaining agreement with Kerr-McGee. The relevant provisions in the agreement relating to sick leave are as follows:

8.7 Sick leave benefits will be paid only for absences from work caused by illness or injury to an eligible employee personally. To qualify for benefits under this plan the employee must, if requested, present satisfactory evidence showing that his absence is due to illness or injury within the meaning of this plan. If an employee is off work due to illness or injury for three (3) or more days, the Company may require written proof from a licensed practicing physician (M. D.) or a licensed practicing Doctor of Osteopathy.

8.10 The Company will handle any particular sick leave case on its own merits. Any abuse or misuse of benefits granted employees under this plan, or false statements made to obtain benefits hereunder, will be cause for discharge.

After noting a general rise in sick leave, and a pattern of sick leave taken by employees in conjunction with days off, the Company reminded employees of the sick leave provision and of discharge for false statements used to obtain sick leave. Appellant Hill thereafter was absent from work for a period of several days. Hill's supervisor was presented with a "sick note" from a doctor after a note from a chiropractor was rejected as unacceptable under the collective bargaining agreement. The statement from Dr. Ellis in the sick note stated: "strep throat—off work May 16–25." As there was a discrepancy between days of work missed and days noted by the doctor, Hill's supervisor contacted Dr. Ellis and it developed that a doctor had not seen Hill.

Hill was discharged shortly thereafter "for using false statements to obtain sick leave benefits, and a history of excessive absenteeism during your employment." A grievance was filed by the Union challenging the discharge, and the matter went to arbitration.

The arbitrator ruled that Hill was improperly discharged and should be reinstated with back pay after a five-day suspension. He held in part:

Had the charges in this discharge been restricted solely to the events related to the May 16 through May 20 absences, the decision in this case would have been simpler, but the discharge letter specifically states two charges—"false statements to obtain sick leave benefits" *and a* "history of excessive absenteeism." If the evidence supporting either of these charges is not sufficient, then the discharge was not for just cause.

. . . [T]he Company did not submit sufficient evidence to prove its charge of excessive absenteeism. For this reason, the discharge cannot be upheld.

.   .   .   .   .

The Grievant must share some blame for the events that grew out of the May 16–20 absences. The Grievant did not make the statement that resulted in payment of sick leave benefits, but the Grievant did obtain the statement. Why, however, did the Company make the payments on the strength of Dr. Ellis' statement if the Grievant had told his supervisor it was Dr. Meinders he had visited? At any rate, it appears that the Grievant was not completely straightforward. Discipline was warranted. (Emphasis supplied.)

The employer in its counterclaim to vacate the award contended that the arbitrator went outside the express terms of the agreement in reaching his decision. The court agreed, finding that the decision was clearly erroneous in requiring proof of *both* excessive absenteeism and false statements. The court said in part:

> The error in the arbitrator's decision is his ruling that the proof of both charges must be sufficient or the company's discharge of plaintiff would not be sustained. Such a ruling does not comport with the express language of the Agreement. As provided in the Agreement, making false statements to obtain sick leave benefits is cause for discharge. Regardless of the finding or evidence with respect to any other ground for dismissal against any employee, a finding of abuse or misuse of benefits, or false statements made to obtain benefits, is cause for discharge. The Court cannot agree with the arbitrator or find any support in the agreement that all charges levied against an employee must be proved in order to sustain the discharge. The Agreement does not so provide and this Court does not so hold.

■ Initially, appellants argue that the counterclaim to vacate was barred by the running of the three-month statute of limitations of the Federal Arbitration Act, 9 U.S.C. § 12, and that the court erred in applying the longer state statute of limitations, 12 O.S.A. §§ 95, 273. However, the statute of limitations to be applied to a suit such as this under section 301 of the Labor Management Relations Act is the state statute of limitations. *Automobile Workers v. Hoosier Corp.*, 383 U.S. 696, 704–5, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192: "[T]he timeliness of a § 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations."

The crucial issue in this case is whether the trial court's finding of clear error by the arbitrator is based upon a correct interpretation of the arbitrator's decision and of the agreement. Appellants argue that the decision is ambiguous and susceptible to different "logical inferences" other than that made by the court that a violation of section 8.10 of the agreement had been found. They urge that under *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."

■ It is apparent that "[t]he award may not be contrary to the express language of the agreement, and must have rational support." *Fabricut, Inc. v. Tulsa General Drivers, etc.*, 597 F.2d 227, 229 (10th Cir.). In *Mistletoe Exp. Service v. Motor Expressmen's Union*, 566 F.2d 692 (10th Cir.), we held that an award cannot be upheld if it is contrary to the express language of the contract. We are not here considering the merits of the award nor did the trial court. Instead it must be determined whether the arbitrator departed from the provisions provided in the labor contract.

■ In the case before us it is clear that the arbitrator ignored the express terms of the agreement. The arbitrator found that the appellant had obtained a false statement; that he was not "completely

straightforward"; and that "discipline was warranted." Under these clear findings the trial court correctly concluded that the only inference to be made was that Hill's action violated section 8.10 as an "abuse or misuse of benefits, or false statements."

Thus once a violation of that section had been established, discharge of the appellant was expressly provided for by the agreement. The arbitrator then added an additional condition or requirement not in the contract—that the appellee also prove excessive absenteeism. As in the *Mistletoe* case, the arbitrator here substituted his views for the express provisions of the contract, added a provision not in the agreement, not bargained for, and in doing so "violated the essence of the agreement."

AFFIRMED.

HOLLOWAY, Circuit Judge, concurring and dissenting:

While I agree with the majority opinion on the merits in holding that the arbitrator violated the essence of the agreement, I am unable to agree with its treatment of the statute of limitations issue. It is my conclusion that the Oklahoma statute of limitations should not be applied because it conflicts with federal labor policy strongly favoring arbitration.

It is true that where federal causes of action have been created without provision of a statute of limitations, the silence of Congress has been interpreted to mean that it is federal policy to adopt the local law of limitation. *Runyon v. McCrary*, 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415; *Zuniga v. AMFAC Foods, Inc.*, 580 F.2d 380, 382–83 (10th Cir.). In such cases the controlling period would ordinarily be the most appropriate one provided by state law. *Johnson v. Railway Express Agency*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295; *International Union, U. A. W. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192. However, a state limitation should not be mechanically applied simply because a limitations period is absent from the federal statute, and "[s]tate limitations periods will not

be borrowed if their application would be inconsistent with the underlying policies of the federal statute." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402; *Marshall v. Intermountain Electric Co., Inc.*, 614 F.2d 260, 262 (10th Cir. 1980).

The national labor policy favoring arbitration as a means of resolving labor disputes is clear. *See Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 242–43, 90 S.Ct. 1583, 1587–88, 26 L.Ed.2d 199. Equally clear is the national policy favoring finality for decisions of arbitrators. *See, e. g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562–63, 574, 96 S.Ct. 1048, 1055–56, 1061, 47 L.Ed.2d 231; *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182, 184 (10th Cir.); *Barbarino v. Anchor Motor Freight, Inc.*, 421 F.Supp. 1003, 1006 (W.D.N.Y.). "The efficacy of that policy would be seriously undermined if arbitration decisions remained open to challenge for extended periods of time." *Wallace v. American Tel. and Tel. Co., Inc.*, 460 F.Supp. 755, 757 (E.D.N.Y.).

*International Union, U. A. W. v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192, relied on by the trial court and the majority opinion, was an action to enforce a collective bargaining agreement, but it did not involve arbitration and the strong policies favoring it. Application of the Oklahoma statutes with much longer limitations periods would undermine the policy for early resolution of disputes concerning arbitration awards. That policy is reflected and furthered by the three-month statute of limitations in the Federal Arbitration Act for motions to vacate, modify or correct an award. *See* 9 U.S.C. § 12 (1970). Although this action is brought under § 301 and not under the Federal Arbitration Act, the federal policy and the limitation period in § 12 are persuasive reasons for rejecting the inconsistent longer Oklahoma limitations period and for applying the three-month federal limitation. *International Union, U. A. W. v. La Crosse Cooler Co.*, 406 F.Supp. 1213, 1215 (W.D.Wis.); *cf. Gatlin v. Missouri-Pacific R. Co.*, 475 F.Supp. 1083, 1088–89 (E.D.Ark.). I would therefore ap-

ply the limitation from the close analogue in the Federal Arbitration Act, over the much longer general limitations of Oklahoma.

Although I thus agree with the appellants that the Oklahoma statute should not be applied, I cannot agree with them that a reversal is justified. Defendant Kerr McGee's counterclaim alleged, among other things, that the award of the arbitrator totally disregards the terms of the agreement, that it is an attempt to substitute the arbitrator's judgment for the agreement, and that the award is invalid. I R. 70. In addition to serving as grounds for an independent action to vacate the award, these averments should be construed as proper grounds of defense against the plaintiffs' action to confirm and enforce the award. Viewed in this light, it has been held that the Federal Arbitration Act does not bar the assertion of such matters as a defense to an action to confirm an award, even beyond the three-month limitation of § 12 of the Federal Arbitration Act. *Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 364 v. Ruan Transport Corp.*, 473 F.Supp. 298, 302 (N.D.Ind.).

For these reasons I would modify the judgment so that it merely denies relief to the plaintiffs, and affirm.