570 F.Supp. 650 (1983)
SEARS, ROEBUCK & CO., Plaintiff,
v.
AUTOMOTIVE, PETROLEUM AND ALLIED INDUSTRIES UNION, LOCAL NO. 618, Defendant.
No. 83-263C(1).
United States District Court, E.D. Missouri, E.D.
September 12, 1983.
*651 S. Richard Heymann, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., Carl E. Smith, Donald J. Spero, Spero, Hayes & Hirschtick, Skokie, Ill., for plaintiff.
George O. Suggs, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before this Court on cross-motions for summary judgment. Each party contends there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R. Civ.P. 56(c).

1. FACTS:
Plaintiff brought this action seeking to set aside and vacate the award of an impartial arbitrator. Defendant filed a counterclaim seeking enforcement of the award and attorney's fees. Plaintiff and defendant then filed the instant cross-motions for summary judgment which purport to dispose of both plaintiff's claim and defendant's counterclaim.
Plaintiff and defendant are parties to a collective bargaining contract covering plaintiff's automotive employees at various St. Louis stores for the period August 1, 1979, through August 1, 1982. Article Two of the contract provides that the discharge of employees is "the exclusive function of management". Article Ten provides for a mandatory four (4)-step grievance procedure. Steps 1 and 2 provide for attempts to settle a grievance between the grievant and the store manager and the grievant and the company personnel manager respectively. Step 3 calls for a written decision from plaintiff if settlement efforts are not successful. Finally, step 4 provides for "final and binding" arbitration by a panel consisting of one company representative, one union representative and one impartial member. According to the contract:
[t]he Arbitrator shall have power to interpret and apply the specific provisions of this Agreement. The Arbitrator, however, shall have no power to alter or amend in any way the provisions of this Agreement, to imply an agreement between them as to any matters which are covered by the specific provisions of this Agreement, or to substitute his/her judgment for that which this Agreement allows to the parties.
Art. 10, § 1.
On January 27, 1982, Anthony Mosblech (grievant), an employee of plaintiff and a member of the collective bargaining unit *652 covered by the contract between plaintiff and defendant, was discharged by plaintiff due to Mr. Mosblech's alleged rude and discourteous treatment of plaintiff's customers. Grievant had been employed by plaintiff at its Crestwood store as a Service Writer in the automotive department. As a Service Writer, Mr. Mosblech was responsible for dealing with customers whose automobiles were brought in for servicing.
Prior to January 27, 1982, grievant was warned several times that his treatment of customers was rude and abrasive. Grievant was discharged by plaintiff on September 15, 1980, as a result of his conduct during a written corrective review of his treatment of customers. However, he grieved his discharge and was reinstated without backpay on November 7, 1980, by agreement of the parties. This settlement was memorialized in a letter, signed by defendant and grievant, which provided, inter alia:
[a]ny reoccurrence of discourteous and rude treatment of customers or obscene and disrespective or subordinate actions with Management will result in immediate dismissal with no further warnings.
Arb.Op. at 2.
Plaintiff, however, allegedly received several more complaints about grievant's treatment of customers. These complaints resulted in his discharge on January 27, 1982. Mr. Mosblech grieved his discharge and following the exhaustion of steps 1 through 3, the matter was submitted to arbitration.
The grievance was heard by an arbitration board, with Joseph J. Nitka sitting as impartial arbitrator, on August 31, 1983. In its decision of February 1, 1983, the board held that the agreement reached by the parties during the prior discharge was a valid "last chance" agreement, Arb.Op. at 13, and that it did not conflict with the terms and conditions of the collective bargaining agreement. Id. Specifically, the board stated:
The Union argues the letter ... was not an addendum or modification of the labor agreement .... The Arbitration Board rejects this contention by the Union. Arb.Op. at 13. He further held that the terms of the letter agreement were not limited in effect to one year. Arb.Op. at 14. Finally, the arbitrator held that Mr. Mosblech was guilty of rude and discourteous treatment of customers, in violation of the letter agreement, and that "the Company did have justifiable reason to discipline the grievant." Arb.Op. at 15.
Nevertheless, the board did not uphold grievant's discharge. It stated:
The Board would normally not substitute its judgment for that of the Company on the extent of the discipline imposed on grievant. However, in this case there are a number of mitigating circumstances which require examination.
Arb.Op. at 15. These "mitigating circumstances" include the testimony of Mr. Mosblech that he thought the letter agreement was effective for only one year, the fact that grievant's supervisor never warned him that the customer complaints violated the letter and would result in discharge, the fact that two of the three of the complaints that Mr. Mosblech's discharge were based upon were not credible, the arbitrator's doubt that plaintiff would have discharged Mr. Mosblech if there had been only one credible complaint, and the board's belief that the standards of the customer whose complaint was credible were higher than normal. Arb.Op. at 15-16. For these reasons, the board concluded that "the Company did not have sufficient reason to discharge the grievant." Arb.Op. at 16. Therefore, the arbitrator's award reduced the disciplinary action from discharge to a five (5) day suspension without pay. Arb.Op. at 16.

2. SCOPE OF REVIEW:
The scope of judicial review of arbitrators' awards is extremely limited, because there is a strong federal policy favoring the non-judicial resolution of labor disputes. Nolde Brothers, Inc., v. Bakery Workers Local 358, 430 U.S. 243, 253-54, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977); Iowa Beef Processors v. Meat Cutters, 627 F.2d 853, 856 (8th Cir.1980); Teamsters Local 878 v. Coca-Cola Bottling Company, *653 613 F.2d 716, 717 (8th Cir.1980); Kewanee Machinery Division v. Teamsters Local 21, 593 F.2d 314, 316-17 (8th Cir.1979). The function of a reviewing court is not to redetermine the merits of the dispute, but rather to decide whether the arbitrator's award "draws its essence" from the contract. Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596-97, 80 S.Ct. 1358, 1360-61, 4 L.Ed.2d 1424 (1960); United Food and Commercial Workers Local 222 v. Iowa Beef Processors, Inc., 683 F.2d 283, 285 (8th Cir.1982). So long as the award has a rational basis rooted in the collective bargaining agreement, it must be enforced even if the court would have reached a contrary result had it considered the matter in the first instance. Nolde Brothers, Inc., v. Bakery Workers Local 358, supra, 430 U.S. at 253-54, 97 S.Ct. at 1073. Steelworkers v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 599, 80 S.Ct. at 1362.

3. OPINION:
Plaintiff contends that the arbitration award must be vacated because the board lacked authority to reduce the penalty from discharge to suspension once it found that grievant was guilty of violating the letter agreement. The plaintiff's position is that where the penalty for defined misconduct is contractual, an arbitrator lacks authority to vary the penalty once he finds that the defined misconduct has occurred. Defendant argues that the award must be enforced because the holding that discharge was not an appropriate punishment here was within the board's authority.
The weight of authority supports the proposition that where the penalty for particular misconduct is a subject of unambiguous contractual provisions, an arbitrator lacks authority to substitute his own judgment on what the appropriate punishment is once he finds that the particular misconduct has occurred. International Brotherhood of Firemen and Oilers, Local No. 935-B v. Nestle Company, Inc., 630 F.2d 474, 477 (6th Cir.1980) (collective bargaining agreement expressly provided that insubordination would be grounds for discharge); International Union of Operating Engineers, Local No. 670 v. Kerr-McGee Refining Corp., 618 F.2d 657, 659-60 (10th Cir. 1980) (where contract expressly provided for discharge for abuse or misuse of sick leave benefits or false statements, and arbitrator found such misconduct, arbitrator lacked authority to require proof of excessive absenteeism before ordering discharge); Mistletoe Express Service v. Motor Expressmen's Union, 566 F.2d 692, 695 (10th Cir.1977) (where contract expressly provided that certain conduct was "just cause" for discharge, and such conduct occurred, arbitrator illegally rewrote the contract when he ruled that the conduct was just cause for discipline, but not for discharge); Timken Company v. Local No. 1123, United Steelworkers of America, 482 F.2d 1012, 1014-15 (6th Cir.1973) (arbitrator exceeded his authority by going outside the record to redefine terms describing conduct warranting discharge where contract definition of such terms was unambiguous); Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Company, 330 F.2d 562, 564-66 (8th Cir.1964) (where employee was guilty of misconduct which contract classified as "proper cause" for discharge, arbitrator exceeded his authority in concluding that discharge was too severe a penalty); St. Louis Theatrical Company v. St. Louis Theatrical Local 6, 543 F.Supp. 1, 3-4 (E.D. Mo.1981) (where contract limited arbitrator's authority to deciding whether conduct warranting discipline had occurred, arbitrator exceeded his authority in concluding that the extent of punishment was inappropriate). This Court agrees with plaintiff that the instant case is controlled by the above rule.
The board found that the letter agreement was valid and part of the contract. These conclusions are both rational and correct. By the terms of the letter, then, once the board determined that grievant had in fact been rude and discourteous to customers, the board was without authority to determine the appropriate punishment. The penalty, by agreement of the parties, is discharge. The number of credible complaints, which the board here found to be a *654 mitigating circumstance, is irrelevant because the letter provides that "[a]ny reoccurrence ... will result in" discharge. Arb.Op. at 2. In ruling that discharge was an inappropriate punishment, the board exceeded its authority and "dispense[d its] own brand of industrial justice". United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). Therefore, the board's decision did not draw its essence from the contract between the parties and must be vacated.
Defendant relies on F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781, 629 F.2d 1204 (7th Cir.1980) and Kewanee Machinery v. Local Union No. 21, 593 F.2d 314 (8th Cir.1979), to support its claim that the board's award must be upheld. However, both cases are distinguishable from the instant facts. In Woolworth, the court upheld the arbitrator's award, which found that certain work rules had been violated but held that discharge was not appropriate even though the contract provided that violation of "any rule" was just cause for discharge, because the contract provision was ambiguous. 629 F.2d at 1214-16. The facts in Woolworth supported the finding that it was not clear whether the parties intended the contract language to be read literally or equitably. Here the facts do not raise any ambiguity in the meaning of the terms of the contract and the board's opinion and decision to reduce the punishment does not indicate that it viewed the meaning of the letter agreement to be unclear.
Kewanee is more easily distinguishable because it involved an express conflict between contractual provisions which required the arbitrator to interpret the contract. In Kewanee, the contract contained both a broad management rights clause and a clause which required "proper cause" to discharge employees. The court upheld the arbitrator's resolution of the conflict, which required "proper cause" for any discharge, and his conclusion that "proper cause" was not present in the case before him. 593 F.2d at 317-18. Here there is no conflict between contractual provisions which required interpretation by the board. Moreover, the contract in the case at bar did not require "proper cause" to discharge. On the contrary, it specifically defined the particular conduct that would result in discharge. Accordingly, defendant's reliance on Kewanee and Woolworth is misplaced and its argument that the award is valid must be rejected.
Finally, defendant contends that plaintiff is now arguing a theory of the case that was not presented to the board and that plaintiff is estopped from making such arguments. This Court has examined the record in this case and rejects defendant's argument as frivolous.
Therefore, it is the judgment of this Court that plaintiff's motion for summary judgment is granted and the arbitration board's award is vacated.