**UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL NO. 7, Plaintiff,**

**v.**

**KING SOOPERS, INC., a DIVISION OF DILLON COMPANIES, INC. and a subsidiary of the Kroger Company, Defendant.**

**No. Civ.A. 99–B–515.**

United States District Court, D. Colorado.

July 2, 1999.

Ilene I. Wolf, John P. Bowen, Michael J. Belo, Wheat Ridge, CO, for plaintiff.

Raymond M. Deeny, Sherman & Howard, L.L.C., Colorado Springs, CO, Emily F. Keimig, Sherman & Howard L.L.C., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

This case is before me on the parties' cross motions for summary judgment pursuant to Rule 56. The motions are adequately briefed and the parties orally argued. For the reasons set forth below, I grant summary judgment in favor of the plaintiff. Jurisdiction exists under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

### I.

The following facts are undisputed. The plaintiff, United Food and Commercial Workers International Union, Local No. 7 (the Union), and the defendant, King Soopers, Inc. (King Soopers), are parties to a collective bargaining agreement (CBA) effective from June 30, 1996 to July 10, 1999. Article 40, Section 114 of the CBA provides that "no employee ... shall be discharged without good and sufficient cause." Compl.Ex. A, at 35. Article 6, Section 14 of the CBA provides "The Employer retains the right to manage the store or stores, to direct the working forces, and to make necessary reasonable rules and regulations for the conduct of business, providing (sic) that said rules and regulations are not in conflict with the terms of this Agreement in any way." *Id.* at 7 (Article 6, Section 114) ("Management Rights Clause"). Finally, the CBA permits arbitration after certain internal dispute resolution procedures are exhausted of any "dispute or complaint ... over the interpretation or application of this Agreement." *Id.* at 36 (Article 43, Section 120). The arbitrator's award cannot "change, alter or modify any of the terms of th[e] Agreement." *Id.* at 37.

Sometime before June 1994, King Soopers instituted a Tardiness and Absence Policy that provides in relevant part: "Unexcused absences (i.e., (sic) not calling or reporting for work for three (3) consecutive work days) will be grounds for immediate discharge." Complaint in Consolidated Civil Action No. 99–D–521, Ex. B at 26. An employee of King Soopers, Ms. Lilly Parbhu, (Ms. Parbhu), failed to report for work from August 4, 1997 until August 19, 1997, when she contacted a King Soopers manager. Defendant's Memorandum In Support Of Summary Judgment at 4, para. 6. On September 5, 1997, King Soopers discharged Ms. Parbhu for failure to call in or report for three consecutive days. *Id.* On September 18, the Union filed a grievance on behalf of Ms. Parbhu with King Soopers pursuant to Article 43 of the CBA protesting her discharge. *Id.* at 4, para. 7. After exhausting the required internal dispute resolution procedures, the parties selected an arbitrator to whom they stipulated the following issues: "Whether the Grievant was dis-

charged for good and sufficient cause? If not, what is the appropriate remedy?" Compl. at 3, para. 14.

In his opinion dated February 14, 1999, the arbitrator found that Ms. Parbhu had violated King Soopers' Tardiness and Absence Policy. The arbitrator also found, however, that Ms. Parbhu had a good employment and disciplinary record over her almost seven year tenure with King Soopers, that she had been disciplined only once during those seven years, and that she had responded well to progressive discipline on that occasion. In addition, the arbitrator cited evidence from a previous arbitration case involving King Soopers that managers at the King Soopers store where Ms. Parbhu worked generally attempt to contact employees who do not report for work. Nobody attempted to contact Ms. Parbhu between August 4 and August 19. The arbitrator also reviewed cases provided by King Soopers and concluded that the employers involved had not resorted to discharge as a penalty for a first-time violation of an absence policy by an employee with a good work and disciplinary record. The arbitrator concluded that King Soopers had good and sufficient cause to discipline Ms. Parbhu, but not to discharge her. The arbitrator thus ordered King Soopers to reinstate Ms. Parbhu and converted her discharge to an unpaid suspension.

King Soopers failed to reinstate Ms. Parbhu. On March 15, 1999 the Union and King Soopers filed separate suits seeking to enforce and vacate, respectively, the arbitrator's award. A motion to consolidate the two cases was granted on May 6, 1999. These cross-motions for summary judgment followed.

## II.

### A.

Rule 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B.

The scope of my review of the merits of the arbitrator's award is limited. The standard of review of arbitral awards is among the narrowest known to the law. *See Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7,* 886 F.2d 275, 276 (10th Cir.1989). *See also International Broth. of Elec. Workers, Local Union No. 611, AFL—CIO v. Public Service Co. of New Mexico,* 980 F.2d 616, 618 (10th Cir.1992). The arbitrator's decision will be enforced if it draws its essence from the parties' agreements and is not merely the arbitrator's own brand of industrial justice. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances. *Ormsbee Development Co. v. Grace,* 668 F.2d 1140, 1146–47 (10th Cir.1982). Courts are not authorized to reconsider the merits of an award even though the parties may allege the award rests on errors of fact or misinterpretations of the parties' agreement. *United Paperworkers Int'l Union, AFL—CIO v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Cal–Circuit ABCO, Inc. v. Solbourne Computer, Inc.,* 848 F.Supp. 1506, 1510 (D.Colo.1994). As a result, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco,* 484 U.S. at 38, 108 S.Ct. 364.

## III.

### A.

It is clear in this case that there is no disputed issue of material fact and sum-

mary judgment is appropriate. Both sides agree they are parties to a collective bargaining agreement, effective from June 30, 1996 to July 10, 1999, that governs Ms. Parbhu's terms and conditions of employment. Both parties agree that the Tardiness and Absence Policy was instituted before the CBA came into effect. Both sides also agree Ms. Parbhu violated the Tardiness and Absence Policy promulgated by the Defendant that served as the basis for Ms. Parbhu's discharge. See Complaint in Consolidated Action No. 99–D–521 at 5, para. 13; Answer at 3, para. 13. Finally, both parties agree that the issues stipulated to the arbitrator were: "Whether the grievant was discharged for good and sufficient cause? If not, what is the appropriate remedy?" See Complaint at 3, para. 14; Answer at 2, para. 14.

### B.

King Soopers maintains that the arbitrator exceeded his authority in reducing Ms. Parbhu's punishment from discharge to suspension. In so arguing, King Soopers relies on case law from other circuits holding that policies and rules promulgated pursuant to authority provided in a management rights clause in a collective bargaining agreement are incorporated into the collective bargaining agreement. See Defendant's Memorandum In Support Of Summary Judgment at 7–10. King Soopers further contends that the Tardiness and Absence policy is not ambiguous and, thus, did not require any interpretation by the arbitrator. Instead, in King Soopers' view, the Tardiness and Absence policy requires discharge for any violations. Because the Arbitrator found that Ms. Parbhu violated the Policy, but ordered her reinstatement, King Soopers' contends the Arbitrator's award must be vacated. See *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (holding that an arbitrator's award "is legitimate only so long as it draws its essence from the collective bargaining agreement.").

King Soopers' first argument raises two questions: first, is the Tardiness and Absence policy part and parcel of the CBA; and, second, if so, is it ambiguous? As to the first question, I conclude that the Tardiness and Absence Policy is not part and parcel of the CBA. The thrust of King Soopers's argument is that the Tardiness and Absence Policy was incorporated into the CBA because it was promulgated pursuant to the CBA's Management Rights Clause. The Tardiness and Absence Policy was promulgated, however, *before* the effective date of the CBA. See Complaint, Ex. A at 43 (Article 57, Section 154: "This Agreement shall be in full force and effect beginning at 12:01 a.m. on June 30, 1996"); Complaint in Consolidated Civil Action No. 99–D–521, Ex. B (dated June 1994). In addition, the CBA did not incorporate rules and regulations existing at the time it went into effect because the CBA contains an integration clause stipulating that the CBA contains all of the covenants, stipulations, and provisions agreed to by King Soopers and the Union. See Defendant's Complaint, Ex. A, at 43 (Article 56, Section 152). As a result, the Tardiness and Absence Policy was not incorporated into the CBA.

This result is not inconsistent with *Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union*, Local 3–372, 76 F.3d 606, 610 (4th Cir.1996), upon which King Soopers relies. There an employee was discharged for violation of a drug policy enacted pursuant to a management rights clause in a CBA *after* the CBA went into effect. See *id.* at 609 & n. 2 (indicating that the drug policy was challenged by the Union and arbitrated pursuant to the CBA). *Mountaineer Gas* is distinguishable on its facts.

*Mountaineer Gas* is also distinguishable because it relied on *General Drivers, Warehousemen and Helpers Local Union 968 v. Sysco Food Servs., Inc.*, 838 F.2d 794, 796 n. 1, 799, n. 4 (5th Cir.1988), also relied upon by King Soopers. The management rights clause in *Sysco Food* explicitly provided that the employer had the right "to make and enforce Rules and Reg-

ulations and that violation thereof may be just cause for discipline or discharge of employees." The clause also stated that "[t]he only question which may be the subject of a 'grievance' is whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action." *Id.* at 796.

In contrast, the Management Rights Clause in this case does not limit the scope of an arbitrator's authority. It also in no way suggests that violation of the previously enacted work rules automatically constitutes good and sufficient cause for discharge. Consequently, I will not apply the rule in Mountaineer Gas to this case. *See First Nat. Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338,* 118 F.3d 892, 896–97 (2d Cir.1997) (refusing to follow *Mountaineer Gas* for similar reasons).

King Soopers' reliance on *Mistletoe Express Serv. v. Motor Expressmen's Union,* 566 F.2d 692 (10th Cir.1977), and *International Union of Operating Eng'rs, AFL—CIO, Local No. 670 v. Kerr–McGee Refining Corp.,* 618 F.2d 657, 660 (10th Cir. 1980) is also misplaced. In *Mistletoe,* section 11 of the collective bargaining agreement between the employer and the union directed that "Employees may be discharged for just cause, among which just causes are the following: ... (G) Failure to settle bills and funds collected for the company within twenty-four (24) hours." *Id.* at 694. An employee failed to settle a bill that he had collected within twenty-four hours, and Mistletoe discharged him pursuant to section 11 of the CBA. *Id.* Similarly, in *Kerr–McGee,* the discharged employee violated a provision of the CBA that expressly established "just cause for discharge." *Kerr–McGee,* 618 F.2d at 658 ("Any ... false statements made to obtain [sick leave] benefits ... will be cause for discharge."). Here, in contrast, Ms. Parbhu was not discharged pursuant to an explicit rule *in* the CBA, the violation of which automatically constituted good and sufficient cause for discharge. *See United Food & Commercial Workers Int'l, AFL—CIO, Local Union No. 634 v. Gold Star Sausage Co.,* 487 F.Supp. 596, 599, n. 2 (D.Colo.1980) (declining to follow *Mistletoe* for similar reasons).

I also note that the primary issue before the arbitrator in this case, as stipulated by *both* of the parties, was whether Ms. Parbhu was terminated for good and sufficient cause. The issue presented to the arbitrator was not whether Ms. Parbhu violated the Tardiness and Absence policy. This seemingly reflects at least a tacit recognition by King Soopers that the Tardiness and Absence policy was not part and parcel of the CBA.

As a result, because I find that the Tardiness and Absence policy is not incorporated into the CBA, I need not address whether the Tardiness and Absence policy itself is ambiguous.

## C.

■ I must address, however, whether the phrase "good and sufficient cause" in the Discharge and Discrimination Clause of the CBA is ambiguous because the CBA authorizes the arbitrator to resolve disputes concerning the interpretation or application of its terms, *see* Compl., Ex. A, at 36–37 (Article 43, Sections 120, 125), one of which directs that employees can be discharged for "good and sufficient cause." *See id.* at 35 (Article 40, Section 114). In interpreting "good and sufficient cause," the arbitrator analyzed evidence extrinsic to the CBA, including whether Ms. Parbhu had violated King Soopers's Tardiness and Absence policy. Tenth Circuit case law permits arbitrators to consider such evidence only when interpreting ambiguous provisions of a CBA. *Champion Boxed Beef Co. v. Local No. 7 United Food and Commercial Workers Int'l Union,* 24 F.3d 86, 88–89 (10th Cir.1994).

I conclude that "good and sufficient cause" is ambiguous. First, the CBA includes neither a definition of "good and sufficient cause," nor a list of offenses that would mandate discharge. Furthermore, the phrase is not self-defining. What is

"good and sufficient cause" for one employer may not be for another. Because "good and sufficient cause" is an ambiguous phrase, under the circumstances here, the arbitrator was justified under *Champion Boxed Beef* in considering evidence extrinsic to the CBA to interpret its meaning.

*Mistletoe* does not command a different result. *Mistletoe* considered whether the use of "may" created any ambiguity in the contractual provision "Employees may be discharged for just cause, among which just causes are the following ..." 566 F.2d at 695. The court held that it did not, at least in part because of the explicit nature of the list of activities that followed the contested sentence that served to define "just cause." Acknowledging the narrowness of its holding, the court went on to state that "[i]n a proper case an arbitrator, in reliance on custom or usage in an industry, may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline, but not for discharge." *Id.* at 696.

In this case, neither a definition of "good and sufficient cause" nor an illustrative list of activities that constitutes "good and sufficient cause" is provided in the CBA. The arbitrator was afforded broader discretion in this case than was the arbitrator in *Mistletoe.*

■ Moreover, the scope of the extrinsic evidence available to the arbitrator was wide. As the Supreme Court held in *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), arbitrators are free to consult "the industrial common law" including "the practices of the industry and shop" in interpreting a collective bargaining agreement. The arbitrator was thus justified in considering extrinsic evidence.

D.

■ King Soopers also argues in effect that the arbitrator abused his authority when he found that Ms. Parbhu violated the Tardiness and Absence Policy, but ordered a sanction less than that prescribed by the Policy itself. But the primary question stipulated to the arbitrator by both parties was whether good and sufficient cause existed for Ms. Parbhu's discharge. King Soopers would have me hold that violation of the Tardiness and Absence Policy mandates discharge. However, that is not the collective bargaining agreement that King Soopers struck. Instead, by including the phrase "good and sufficient cause" in the CBA without a definition or list of illustrative offenses that would justify discharge, King Soopers bargained for contractual ambiguity. And, King Soopers also contracted to have an arbitrator, not a federal court, interpret that ambiguity. Consequently, I will not overturn the arbitrator's decision.

Tenth Circuit authority supports this result. As noted, *Mistletoe* instructs that "[i]n a proper case an arbitrator, in reliance on custom and usage in an industry, may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline but not for discharge." *Mistletoe,* 566 F.2d at 695. Here, the arbitrator investigated both industry customs of disciplining employees and the means by which the Tardiness and Absence Policy was administered by King Soopers in determining that Ms. Parbhu should only be subjected to progressive discipline. Under *Mistletoe,* therefore, the arbitrator did not abuse his authority.

My conclusion is also supported by authority from other circuits. At least six other circuits, the Second, Third, Sixth, Eighth, Ninth, and Eleventh, have held that if a CBA neither defines "good and sufficient cause" nor lists offenses that would lead to discharge, then reviewing courts must defer to an arbitrator's interpretation of the scope and meaning of the "good and sufficient cause" provision of the agreement. *See, e.g., IMC–Agrico Co. v. International Chemical Workers Council*

of the United Food and Commercial Workers Union, AFL—CIO, 171 F.3d 1322, 1327–28 (11th Cir.1999); *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338,* 118 F.3d 892, 896–97 (2d Cir.1997); *Midwest Coca–Cola Bottling Co. v. Allied Sales Drivers, Local 792,* 89 F.3d 514, 518 (8th Cir.1996); *United Transp. Union Local 1589 v. Suburban Transit Corp.,* 51 F.3d 376, 380–81 (3d Cir.1995); *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890, 892–93 (6th Cir.1989); *International Ass'n of Machinists & Aerospace Workers, Dist. Lodge No. 50 v. San Diego Marine Constr. Corp.,* 620 F.2d 736, 738–39 (9th Cir.1980). In addition, all six of the above-cited circuits have specifically upheld arbitrator's rulings that "good and sufficient cause" provisions include a progressive discipline component. *IMC–Agrico,* 171 F.3d at 1327–28; *First Nat'l Supermarkets, Inc.,* 118 F.3d at 896–97; *Midwest Coca–Cola Bottling Co.,* 89 F.3d at 518; *Suburban Transit Corp.,* 51 F.3d at 380–81; *Eberhard Foods,* 868 F.2d at 892–93; *San Diego Marine Constr. Corp.,* 620 F.2d at 738–39.

Finally, it is significant that the questions stipulated to the arbitrator by both parties provided him with the authority to establish a remedy in the event that "good and sufficient cause" for discipline, but not discharge, was established. This shows that King Soopers recognized that the arbitrator had the authority to interpret the "good and sufficient cause" provision to include some form of progressive discipline. Of course, King Soopers, with the consent of the Union, could have, but did not, expressly limit the discretion of the arbitrator with respect to remedies. *Misco,* 484 U.S. at 41, 108 S.Ct. 364 ("parties ... may limit the discretion of the arbitrator" with respect to remedies).

### E.

If King Soopers wished to have an unquestionable right to discharge an employee for any specified conduct, it should have negotiated for recognition of that right in the CBA. That is not the bargain it reached with Ms. Parbhu's union. Instead, both parties agreed that an arbitrator could interpret the provisions of the CBA, including what constitutes "good and sufficient cause." To the extent there is tension in the CBA between King Soopers' right to make and enforce rules under the Management Rights Clause, and to discharge only for "good and sufficient cause," this is an issue properly addressed by the arbitrator. Under the highly deferential standard of review that I must follow, I cannot say that the arbitrator's decision in this case is unreasonable.

It is therefore ORDERED as follows:

1) The Union's motion for summary judgment is GRANTED;

2) King Soopers' motion for summary judgment is DENIED;

3) The Union is awarded judgment confirming and enforcing the arbitrator's award;

4) King Soopers' complaint to vacate the arbitrator's award is DISMISSED;

5) The Union is awarded its costs.