**LITVAK PACKING COMPANY,**
Plaintiff–Appellant,

v.

**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL UNION NO. 7,**
Defendant–Appellee.

No. 87–2150.

United States Court of Appeals,
Tenth Circuit.

Sept. 21, 1989.

Walter V. Siebert of Sherman & Howard (Susan K. Grebeldinger with him, on the briefs), Denver, Colo., for plaintiff-appellant.

James C. Fattor of Hornbein, MacDonald and Fattor (Susan J. Tyburski and Donald P. MacDonald, on the brief), Denver, Colo., for defendant-appellee.

Before LOGAN, SETH and TACHA, Circuit Judges.

LOGAN, Circuit Judge.

The United Food and Commercial Workers, Local Union No. 7 (U.F.C.W.) filed a grievance protesting Litvak Packing Company's (Litvak) discharge of Loyal P. Barstow. The matter was referred to arbitration pursuant to a collective bargaining agreement, which resulted in an award rescinding the discharge. Litvak sued in federal district court to vacate the award. On cross-motions for summary judgment, the district court granted U.F.C.W.'s motion and enforced the award. This appeal followed.

Barstow was a production employee at Litvak's slaughterhouse, meat packing, and processing plant in Denver, Colorado. He was discharged on November 14, 1986, for failing on the previous day to draw and store blood from cattle fetuses, a part of his job in the condemn room of the plant.

The collective bargaining agreement in effect at the time of the discharge provides in relevant part:

"*6.01* No employee covered by this Agreement shall be suspended, demoted, or dismissed without just and sufficient cause. Sufficient cause for discharge shall include, among other reasons, persistent tardiness or absence, dishonesty, negligence, incompetence, insubordination, intoxication while on duty, refusal to perform any reasonable work, service or labor when required to do so by the Employer...."

The parties stipulated the following issue to be decided by the arbitrator: "Did the Company have just and sufficient cause to discharge the Grievant, Loyal P. Barstow, on November 14, 1986?" I R. Tab 1 at 3 (Arbitrator's Award). Litvak argues, however, that the arbitrator "essentially required Litvak to prove that Barstow was insubordinate or refused to perform a reasonable work order." Brief of Appellant at 13. The arbitrator did focus on these factors, finding that Barstow was fired "for insubordination and refusal to save the blood of the [cattle fetuses] as he had been told to do by his supervisors," I R. Tab 1 at 7, and deeming "[t]he real question in this case [to be] whether the Griev-

ant's failure in job performance can be properly labeled as 'insubordination' and/or 'the refusal to perform any reasonable work required by the Employer' so as to constitute just and sufficient cause for discharge under the terms of § 6.01 of the contract," *id.* at 11.

The arbitrator concluded that even though there was no reason for Barstow's "failure to save blood on November 13th other than carelessness, laziness, and/or neglect," and that Barstow "was derelict in carrying out his duties, ... he was not insubordinate and he did not refuse to perform work when required to do so by his Employer." *Id.* at 12. The arbitrator then stated that "[d]ereliction of duty involving extreme carelessness and neglect and which results in serious economic damage to the employer may itself be grounds for discharge. But that was not the grounds stated by the Company in this case and, furthermore, all of the circumstances of this case do not add up to just and sufficient cause for discharging the Grievant." *Id.*

Our review of arbitral awards is among the narrowest known to the law. We must enforce an award which "draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). This standard is not an invitation to a court to substitute its judgment for that of an arbitrator. The parties have contracted for an arbitrator to resolve their disputes, not a court. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987); *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). They have agreed to be bound by the arbitrator's factfinding and contract interpretation whether his findings and conclusions are correct or not. *Misco*, 108 S.Ct. at 370–71; *W.R. Grace*, 461 U.S. at 765, 103 S.Ct. at 2183. Thus, "as long as the arbitrator is even *arguably* construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*,

108 S.Ct. at 371 (emphasis added). If the parties disagree with the arbitrator's interpretation, their remedy is to modify their contract or select a new arbitrator.

Litvak argues that because the arbitrator "specifically found that Barstow was negligent," he had no alternative to upholding the discharge. Brief of Appellant at 15. We agree that the arbitrator cannot ignore the express terms of § 6.01. The arbitrator, however, neither found this to be a negligence case nor that Barstow was negligent within the meaning of § 6.01. On the contrary, the arbitrator interpreted the contract and concluded that Barstow's carelessness, laziness, and neglect, none of which are mentioned specifically in § 6.01, did not constitute just and sufficient cause to fire this 23–year employee. Although we might well have reached a contrary conclusion on the merits, the arbitrator's award was certainly "rooted in the agreement," *International Brotherhood of Electrical Workers v. Professional Hole Drilling, Inc.*, 574 F.2d 497, 503 (10th Cir. 1978), and we cannot substitute our interpretation of the contract for his. *Misco*, 108 S.Ct. at 371.

Accordingly, the order of the district court enforcing the arbitration award is AFFIRMED.

SETH, Circuit Judge, dissenting:

I must respectfully dissent because, in my view, the consideration of the unusual details of the case require a much different analysis.

This appeal could be very easily decided on an abundance of authority if the award of the arbitrator or the appeal in any way involved an interpretation of terms of a labor agreement, or if the appeal was on the merits of an arbitrator's award, or if the contract had not excepted from arbitration certain issues. But unfortunately this is not such a case, and is more complex than the majority would insist.

Instead, this is one of those very rare cases wherein the court must examine *the reason* forcefully expressed by the arbitrator for reaching his decision which demon-

strated the *sole basis* for the award which was the severity of the remedy as applied to this employee. However, this was a subject reserved to the employer, and in fact this was acknowledged by the arbitrator. In my view, the reason for the result reached is a frank and honest expression by the arbitrator that the *remedy* applied for the employee's violation of the contract was too severe in his view. This was a sincere expression of his feelings, but unfortunately it should not have dominated the result as it did. The severity of the remedy, which was discharge, was in the arbitrator's view not a good solution when applied to an experienced employee. This view caused the award to be an expression of the arbitrator's "own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361. The issue in the case was not "insubordination." Instead there were several issues related to the several other causes in the agreement or contract listed in Section 6.01 wherein it is stated that "[s]ufficient cause for discharge *shall include*" any of the there listed *eight* reasons.

The arbitrator made the following findings of fact, which are not disputed on appeal: Mr. Barstow had worked for many years in the plant's condemn room, where one of his duties was to bleed the slunks. Mr. Barstow had received a warning letter in June 1974 for his failure to bleed the slunks. He transferred out of the condemn room in 1984, but chose to return there on November 10, 1986. At that time, he was told he must perform all the duties associated with the job, including the bleeding of slunks. This was reiterated to Mr. Barstow on November 13, 1986. That same day, Mr. Barstow failed to bleed any of the slunks on his shift.

As to the violation of the contract by the employee, the arbitrator found as to Mr. Barstow's failure to save blood that he (the arbitrator) could find no reason for Mr. Barstow's failure to save any blood that day "other than carelessness, laziness, and/or neglect." Award of the Arbitrator, at 12. He specifically found that Mr. Barstow was "derelict in carrying out his duties," that Mr. Barstow's performance that day was "unacceptable," and that Mr. Barstow's failure in his job performance was "very serious." Award of the Arbitrator, at 11–13. The arbitrator found that Mr. Barstow's proffered excuse for his failure to bleed any slunks on November 13, that none of them were big enough to warrant bleeding, was "unsupported by the evidence and just too incredible to believe." Award of the Arbitrator, at 11.

Next, the arbitrator in his report stated that "[s]ome discipline was clearly justified but [Mr. Barstow's] failure in job performance was not enough, by itself, to justify the discharge of a 23 year employee." Award of the Arbitrator, at 12.

The arbitrator went on to offer three reasons why the appellant's discharge of Mr. Barstow would not be upheld despite the arbitrator's finding that Mr. Barstow's performance on the job had been completely unacceptable:

"(1) [appellant's] failure, over the course of many years, to make sure that the bleeding of slunks was being done in the manner that it wanted it to be done;

"(2) [appellant's] failure, even after the problem was discovered, to take corrective action in the form of specific instructions, warnings, and, where appropriate, progressive discipline; and

"(3) [appellant's] failure to check the Grievant's personnel file and to give proper consideration to his 23 years of service with nothing more than a letter of warning on his record that was more than 12 years old."

Award of the Arbitrator, at 13–14. This statement of reasons is perhaps the most revealing part of the award and brings the award into perspective. It demonstrates the basis of the arbitrator's decision was the remedy alone, and demonstrates that the arbitrator was thus well outside the scope of his authority.

The decision to discharge or apply another penalty is committed to the discretion of appellant-employer under the agreement. The arbitrator's opinion makes clear that

he was troubled with his obvious lack of authority as to a remedy.

"Had [appellant] suspended the Grievant for a few days, rather than discharged him, and warned him that continued dereliction of duty would result in further discipline up to and including possible discharge, the Arbitrator would have upheld that action.... But ... the Arbitrator is not free to substitute such a suspension in place of the discharge in this case. *The parties have given the Arbitrator no jurisdiction at all to decide upon an appropriate remedy.*"

Award of the Arbitrator, at 14 (emphasis added). Because the arbitrator disagreed with the penalty that appellant imposed upon Mr. Barstow for his failure of performance on the job, he simply refused to allow the appellant to impose that penalty, despite the fact that the decision whether to impose that penalty is vested in the appellant. Once the arbitrator had determined that a failure of performance on the job had occurred, his authority over this matter ended. There was really no separate issue of insubordination as all issues were treated by the arbitrator.

The Court in *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, refers to the broad authority of the arbitrator in the "formulation of remedies" and emphasizes it, but then adds, "The parties, of course, may limit the discretion of the arbitrator in this respect." 484 U.S. at 41, 108 S.Ct. at 372. The "of course" is significant. In *Misco* the Court noted that the Company argued that it had unreviewable discretion to discharge an employee once a violation of Rule II.1 was found, and said:

"But the parties stipulated that the issue before the arbitrator was whether there was 'just' cause for the discharge, and the arbitrator, in the course of his opinion, cryptically observed that Rule II.1 merely listed causes for discharge and did not expressly provide for immediate discharge. Before disposing of the case on the ground that Rule II.1 had been violated and discharge was therefore proper, the proper course would have been remand to the arbitrator for a defin-

itive construction of the contract in this respect."

484 U.S. at 41–42, 108 S.Ct. at 372–73. The case before us is *very* different for at least three significant reasons.

First, in the case before us, in contrast to *Misco,* the causes for discharge were not "merely listed," but instead the contract expressly provides for discharge: *"Sufficient cause for discharge shall include ... negligence, incompetence ... refusal to perform any reasonable work,"* etc. (Emphasis added.) Thus the reasons listed are expressly stated as reasons for *discharge.*

Second, the arbitrator acknowledged he had no authority as to remedies.

Third, the Court in *Misco* notes that broad authority in the arbitrator exists as to remedies "where it is contemplated that the arbitrator will determine the remedies for contract violations that he finds...." 484 U.S. at 38, 108 S.Ct. at 371.

The pertinent section of the contract-agreement, § 6.01, is as follows:

"No employee covered by this Agreement shall be suspended, demoted, or dismissed without just and sufficient cause. *Sufficient cause for discharge shall include,* among other reasons, persistent tardiness or absence, dishonesty, negligence, incompetence, insubordination, intoxication while on duty, refusal to perform any reasonable work, service or labor when required to do so by the Employer...." (Emphasis added.)

The contract thus provided that "sufficient cause for discharge *shall include"* the seven specific reasons including "negligence." (Emphasis added.) The arbitrator, of course, found the reasons for Mr. Barstow's failure to save blood as "carelessness, laziness, and/or neglect." Also he was "derelict in carrying out his duties," and that his performance was "unacceptable" and "very serious". In contrast the Supreme Court in *Misco* only had a list of causes with no mandatory language. Thus no remand is here suggested.

The majority's position apparently is that the words "carelessness" and "neglect"

were not the equivalent of the particular word in § 6.01—"negligence." However, the arbitrator made no such distinction. He used all the above quoted strong words and concluded, at 12:

"Some discipline was clearly justified but [Mr. Barstow's] failure in job performance was not enough, by itself, to justify the discharge of a 23 year employee."

This combination of descriptive terms and the conclusion that "some discipline was clearly justified" is very revealing. It is obvious that the case was decided on the remedy.

The Supreme Court has recently acknowledged that a contract may vest unreviewable discretion in management to discharge an employee once a violation of the contract by the employee has occurred. "The parties ... may limit the discretion of the arbitrator" with respect to the formulation of remedies. *Misco*, 484 U.S. at 41, 108 S.Ct. at 372.

In this case, the arbitrator considered *all* of the grounds for discharge enumerated in the contract and determined that some of those grounds were present in this case. Nevertheless he refused to uphold appellant's discharge of Mr. Barstow. In so doing he varied the terms of the agreement by vesting in himself the discretion to decide when the employer may exercise its right to discharge an employee although at the same time he had no authority as to a remedy.

It is perfectly obvious that the scope of judicial review of arbitration awards is narrow, narrow, narrow, but the Supreme Court has delineated the scope of that review as follows:

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

*United Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361. This is a "no choice" case. An arbitrator's award must be upheld unless it is contrary to the express language of the employment contract, or unless it is so unfounded in reason and fact, so unconnected with the wording and purpose of the contract as to manifest an infidelity to the obligation of the arbitrator. *Mistletoe Express Service v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir.). An award will not be upheld when the arbitrator has rewritten the contract or departed from its provisions. *Mistletoe*, 566 F.2d at 695; *International Union of Operating Engineers, AFL–CIO, Local No. 670 v. Kerr–McGee Refining Corp.*, 618 F.2d 657, 659 (10th Cir.).

The arbitrator's award at issue completely fails to withstand review under these standards. Appellant does not challenge any of the factual findings made by the arbitrator in his opinion. This case does *not* involve the interpretation of an ambiguous employment contract. *Cf. Sterling Colorado Beef Co. v. U.F.C.W., Local No. 7*, 767 F.2d 718 (10th Cir.). Nor does it involve an employment agreement that vests any amount of discretion in the arbitrator over the formulation of remedies, a fact expressly acknowledged by the arbitrator himself in the text of his opinion. Award of the Arbitrator, at 14. *Cf. United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364 (opinion of arbitrator unclear as to whether the arbitrator construed the contract as vesting in him some discretion in formulating remedies); *Communication Workers of America v. Southeastern Electric Cooperative of Durant, Oklahoma*, 882 F.2d 467 (10th Cir.) (issue to be resolved at arbitration was whether grievant was discharged for just cause, and, if not, what the remedy should be).

It cannot be said in this case that "the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," *Misco*, 484 U.S. at 38, 108 S.Ct. at 371, nor can it be said that the arbitrator's award "draws its essence" from the collective bargaining agreement.

This case is directly controlled by our opinion in *Mistletoe* which has in no way been impacted by subsequent Supreme Court opinions. The arbitrator went beyond the unambiguous wording of the agreement in holding in substance that the remedy of discharge was too severe for a 23 year employee. In doing so, he improperly "substituted his views of proper industrial relationships for the provisions of the contract." *Mistletoe,* 566 F.2d at 695.

The employment contract in *Mistletoe* read as follows:

"Employees may be discharged for just cause, among which just causes are the following:

. . . .

"(G) Failure to settle bills and funds collected for the company within twenty-four (24) hours."

566 F.2d at 694. The arbitrator found that the grievant had violated Section G and that the Employer "did show 'just cause' to impose some discipline," *Id.* (quoting opinion of arbitrator), as in the case before us. Nevertheless, it was "the opinion of the arbitrator that just cause was not shown by the [employer] for discharge and that the supreme penalty of termination should be reduced to a suspension." *Id.* (quoting opinion of arbitrator).

The district court in *Mistletoe* held that "the arbitrator exceeded his authority by reading the theory of progressive discipline into the ... contract and by changing the penalty from discharge to suspension." *Id.* This court affirmed, noting, at 695, that:

"In reducing the penalty from discharge to suspension, the arbitrator substituted his views of proper industrial relationships for the provisions of the contract. He expressly found that there was just cause for discipline. The contract says that the acts, which the arbitrator found are just cause for discipline, are just cause for discharge. The arbitrator may not rewrite the labor contract."

I am not prepared to overrule *Mistletoe.* It is difficult to see how the majority's opinion in this case can be consistent with our opinion in *Mistletoe,* as it involves an identical attempt on the part of an arbitrator to graft principles of "progressive discipline" onto a perfectly unambiguous agreement vesting total discretion over remedies in the employer. The majority overrules *Mistletoe.* The arbitrator simply did not have the authority he attempts to exercise in this case and even acknowledges he has no such authority.

The majority's ruling disregards almost thirty years of Supreme Court and Tenth Circuit precedent on judicial review of arbitral awards. The Arbitrator's Award violates the essence of the collective bargaining agreement.

The award should be set aside.