**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

**Filed 10/10/96**

---

TEREX CORPORATION,

      Plaintiff-Appellant,

v.

LOCAL LODGE 790 INTERNATIONAL
ASSOCIATION OF MACHINISTS AND
AEROSPACE WORKERS, AFL-CIO,

      Defendant-Appellee.

No. 95-5190
(D.C. No. 95-C-412-BU)
(Northern District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **SEYMOUR,** Chief Judge; and **PORFILIO** and **EBEL**, Circuit Judges.

---

Terex Corporation appeals from a final order and judgment issued by the United

States District Court for the Northern District of Oklahoma, granting Local Lodge 790's

Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure. The district court entered final judgment for Local Lodge 790 (the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Union), rejecting Terex's attempt to vacate an arbitration award rendered under the parties' Collective Bargaining Agreement (the Agreement). In partial reliance upon "practices of the shop," the district court found the arbitration award drew its essence from the Agreement and the Union was entitled to its enforcement. Seeing no factual predicate in the pleadings for the conclusion that the attendance policy was subject to bargaining as part of the practices of the shop, we reverse.

Unit Rig, a division of Terex, manufactures large, off-highway mining vehicles in its Tulsa, Oklahoma plant. Local Lodge 790 is a labor organization representing approximately 190 of Terex's employees. Terex and the Union entered into a Collective Bargaining Agreement that was effective until April 30, 1996. The Agreement defined grievance and arbitration procedures for the resolution of disputes and called for unsolved grievances to be submitted to an arbitrator for resolution. The Agreement limited the authority of the arbitrator to "the application and interpretation of the existing Agreement or any supplements thereto or amendments thereof."

On February 9, 1994, Terex implemented a revised "No Fault Attendance Policy" in an effort to correct a perceived problem with employee attendance. On February 14, 1994, the Union filed a grievance with Unit Rig protesting Terex's unilateral implementation of the policy. Attempts to resolve the grievance failed, and the Union invoked the arbitration procedure.

W. Edwin Youngblood, the arbitrator selected by the parties, conducted a hearing and reviewed the evidence and briefs submitted by both sides. On February 8, 1995, Mr. Youngblood found Terex had violated the Agreement with its unilateral change in the attendance policy and called for Terex to reinstate the former attendance policy.

Terex brought the present action, under the Labor Management Relations Act and the Federal Arbitration Act, seeking to set aside the arbitration award. The Union filed a counterclaim, seeking enforcement of the award. After briefs were submitted, the Union filed a motion for judgment on the pleadings in accordance with Fed. R. Civ. P. 12(c). In granting the Union's motion, the district court stated:

> It appears that Terex simply seeks to have the Court re-litigate the grievance, which it has no authority to do.
>
> Having reviewed the arbitration award and the Agreement between the parties, the Court finds that the arbitration award draws its essence from the Agreement. It is clear from the arbitration award that the Arbitrator explicitly referred to and relied upon the Agreement in reaching his decision. Moreover, the Court rejects Terex's argument that the arbitration award did not draw its essence from the Agreement because it was inconsistent with the Arbitrator's own findings. Although the Arbitrator recognized that Terex had a right under the management rights clause of the Agreement to establish rules governing the workplace and that Terex had a practice of doing so, including establishing an attendance policy, the **Arbitrator found that a major change in working conditions, such as the new attendance policy required, was a bargainable subject and any unilateral change of a bargainable subject violated the Agreement**.

(emphasis added). Terex now solicits review of the district court order.

Terex argues the award does not draw its essence from the Agreement and must be vacated because it is inconsistent with the arbitrator's own findings. The company claims

– 3 –

the arbitrator expressly found that the Management Rights clause of the Agreement authorized Terex to implement work rules, and even used the company's attendance policy as an example of the kind of rules within its control. Specifically, the arbitrator stated: "The Management Rights clause in the Collective Bargaining Agreement provides the authority to make rules governing the workplace, and that has been the practice. As an example, is its Attendance Policy." Terex argues that despite this finding, the arbitrator contradicted himself by concluding, "to change that policy during the term of the Collective Bargaining Agreement without the Union's agreement, or unilaterally, is prohibited because it violates either the Collective Bargaining Agreement or practice."

Terex maintains that once the arbitrator found the Management Rights clause of the Agreement authorized Terex to implement an attendance policy, he was compelled to render an award for the company. It argues the arbitrator ignored his own finding and exceeded his authority by essentially rewriting the Agreement to conform with "his own brand of industrial justice." Terex urges the award does not draw its essence from the Agreement because the arbitrator admitted the Agreement's Management Rights clause gives Terex the power to implement work rules pertaining to employee attendance. Therefore, the award should be vacated.

In response, the Union argues the award is expressly based on the arbitrator's application of the plain language of the Agreement to Terex's unilateral implementation of a heavily altered attendance policy. Terex notes that throughout the opinion, the

arbitrator refers to and relies upon the terms and provisions of the Agreement. The Union argues the award clearly draws its essence from the Agreement and, therefore, should be affirmed.

Additionally, the Union attacks Terex's reliance on the arbitrator's reference to the Management Rights clause as being inconsistent with other language in the award. The Union argues Terex hinges its entire case on two sentences taken out of context. When viewed in relation to the entire opinion, the Union maintains the reference was simply one step in the arbitrator's chain of reasoning—a step that properly took into account industry norms and the parties' past practices. The reference does not contradict or obscure his finding that a substantial unilateral change in the policy violates the Agreement.

Finally, the Union claims that even if the reference makes the award somewhat ambiguous, the Supreme Court has ruled that ambiguity is no basis for vacating an arbitration award. *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 764 (1983) (stating an award must be upheld as long as it draws its essence from the collective bargaining agreement, even when the basis for the arbitrator's decision may be ambiguous). The Union relies on the strong federal policy favoring the enforcement of arbitration awards, and urges this court to affirm the district court's decision because the award clearly draws its essence from the Agreement.

Judgment granted on the pleadings under Rule 12(c) is subject to *de novo* review. *Estate of Washington v. United States Secretary of Health & Human Servs.*, 53 F.3d.

1173, 1174 (10th Cir. 1995). In reviewing a judgment on the pleadings, we must view the facts presented in the complaint as true and construe them in the light most favorable to the non-moving party. *Mock v. T.G.& Y. Stores Co.*, 971 F.2d 522, 529 (10th Cir. 1992).

It is well settled that "[j]udicial review of an arbitral award . . . 'is among the narrowest known to the law.'" *Champion Boxed Beef Co. v. Local No.7*, 24 F.3d 86, 87 (10th Cir. 1994) (quoting *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No.7*, 886 F.2d 275, 276 (10th Cir. 1989). In *Champion Boxed Beef*, we stated:

> The arbitrator's factual findings are beyond review, and, so long as the arbitrator does not ignore the plain language of the collective bargaining agreement, so is his interpretation of the contract. As long as the arbitrator's award "draws its essence from the collective bargaining agreement" it must be upheld.

*Id.* at 87. (citations omitted).

This court has stressed its limited power to review arbitration awards by stating:

> We will not interfere with an arbitrator's decision "unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation." *Sterling, Colo. Beef Co. v. United Food & Commercial Workers Local Union No. 7,* 767 F.2d 718, 720 (10th Cir. 1985). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38 (1987).

*United Food & Commercial Workers Local Union No. 7R v. Safeway Stores, Inc.*, 889 F.2d 940, 947 (10th Cir. 1989).

This Mount Everest of standards reflects the strong federal policy favoring arbitration agreements.  The concept that the award must "draw its essence from the agreement" was established in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).  In *Enterprise Wheel*, the Court also stated, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Id.* at 598.

Applying this narrow standard to the present case, we could conclude the district court acted properly in finding the Union was entitled to judgment on the pleadings against Terex, but for one problem.  The pleadings filed in this action rely solely upon the language of the contract.  Other than those we have described, there are no facts alleged relating to the past practices between the parties regarding the bargainability of major changes in attendance policy, and nothing contained in the record provides that information.  Indeed, nowhere do we find the facts upon which the arbitrator relied to reach his conclusion the change in attendance policy was bargainable because it established practice between the parties.   While such practices can surely be considered in determining whether a matter arises out of the collective bargaining agreement, *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581-82 (1960), "the labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law--the practices of the industry and the shop--is

equally a part of the collective bargaining agreement although not expressed in it." It is also apparent the arbitrator in this case went beyond the language of the agreement itself to support his conclusion. He stated:

> I believe and find that a major change in working conditions, such as the new policy requires, is a bargainable subject and to change the policy unilaterally while the Collective Bargaining Agreement is in effect violates the Collective Bargaining Agreement. Under some circumstances, unilateral action may be permitted but the fact that either a Collective Bargaining Agreement or a practice was in effect covering the subject matter changes that. As Elkouri and Elkouri state in *How Arbitration Works, 4th Edition*, page 475, "***Where an arbitrator finds that management is contractually bound as to a matter, either by the parties' written Collective Bargaining Agreement, or by virtue of a binding past practice as part of their "whole" agreement, management generally will remain bound at least until the end of the term of the collective agreement.*" I find this to be the situation in this case. The Management Rights clause in the collective Bargaining Agreement provides the authority to make rules governing the work place, and that has been the practice. As an example, is its Attendance Policy. But to change that policy during the term of the Collective Bargaining Agreement without the Union's agreement, or unilaterally, is prohibited because it violates either the Collective Bargaining Agreement or practice.* Accordingly, I find the Collective Bargaining Agreement has been violated thereby. The grievance must, therefore, be sustained and the parties put back in the situation existing prior to the unilateral change made by the Company in 1994.

(emphasis added).

In reaching his conclusion, the arbitrator found that Terex may have had the authority to *establish* an attendance policy that would remain in effect throughout the term of the Agreement, but because of past practices between the parties, that authority could not be *exercised* unilaterally without violating the Agreement. The theory is sound,

and it may be supported by facts, but none have been asserted in the pleadings upon which the judgment was based.  We must therefore conclude the judgment was premature and **REVERSE AND REMAND** for further proceedings.

**ENTERED FOR THE COURT**

**Judge John C. Porfilio**
**United States Circuit Judge**