**KENNECOTT UTAH COPPER CORPORATION, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL—CIO, et al., Defendants.**

No. 2:97 CV 640 K.

United States District Court,
D. Utah,
Central Division.

May 11, 1998.

their motion is not addressed and is denied as moot inasmuch as Plaintiffs' motion is denied on other grounds.

Raymond M. Deeny, Sherman & Howard L.L.C., Colorado Springs, CO, Emily F. Keimig, Sherman & Howard L.L.C., Denver, CO, Jathan W. Janove, Janove & Associates, Salt Lake City, UT, for Plaintiff.

Arthur F. Sandack, Salt Lake City, UT, for Defendants.

Rudolph L. Milasich, Jr., Heather Keele, Pittsburgh, PA, for United Steelworkers of America.

## ORDER

KIMBALL, District Judge.

Plaintiff Kennecott Utah Copper Corporation ("Kennecott") brings suit to vacate an award issued by Arbitrator Scott Daniels on August 6, 1997 (the "Award"). The Award interprets and applies a Collective Bargaining Agreement ("CBA") and a Memorandum of Agreement ("MOA") that supplements the CBA by adopting and setting forth Kennecott's policy regarding the use of drugs and alcohol (the "Policy"). United Steelworkers of America, AFL—CIO, two union subunits, and various union representatives are named as defendants (collectively, the "Union"). The Union countersues to enforce the award. Both sides now move for summary judgment.

## BACKGROUND

This dispute arises in the aftermath of an accident in which a Kennecott employee (the "Employee") lost control of a loaded, ten-wheel dump truck that went off a road, through an earthen berm, and rolled over. The accident occurred on Kennecott's premises, but near a public road. The Employee's supervisors concluded that the most likely cause of the accident was an equipment failure rendering the steering inoperable, but that the Employee could have applied the brakes earlier and stopped the vehicle prior to the rollover.

Pursuant to the Policy, the Employee was tested for drugs. The results were positive and confirmed the presence of cannabinoids at a level above the maximum allowed under the Policy. Pursuant to the CBA, a hearing was held to determine what disciplinary action was appropriate. At the hearing, the Employee stated that the Employee had taken a couple of puffs of marijuana five to six weeks earlier—an account that was inconsistent with the test results. The Employee later admitted that the Employee had smoked marijuana two days prior to the acci-

dent. Because the test results exceeded the allowable limit set forth in the Policy,[1] Kennecott terminated the Employee.

Again pursuant to the CBA, the termination was grieved and proceeded to arbitration, where Arbitrator Daniels concluded that Kennecott did not have just cause to terminate and reinstated the Employee to the Employee's former position, but did not award back pay because the Employee initially misrepresented facts concerning the Employee's drug use.

Arbitrator Daniels interpreted the CBA and the MOA to require Kennecott to produce some evidence of on-the-job impairment as a prerequisite to imposing discipline "for a positive test result on this particular test." The particular test in reference detects the presence of marijuana for a week to ten days after consumption. The testimony in arbitration was that marijuana is active in the body for between three and eight hours.

The CBA provides that no employee will be terminated without "just cause," but the term is not defined. In relevant part, the Policy provides: (i) that "[w]orking while under the influence of drugs or alcohol or while not being free from the presence of drugs" is a violation of the Policy, (ii) that any positive drug test is a violation of the Policy, (iii) that compliance with the Policy is a condition of employment, and (iv) that the company "intends to take disciplinary action, up to and including termination, against any employee who violates this Policy."

## STANDARD OF REVIEW

The judicial review of an arbitration award is "among the narrowest known to the law." *Litvak Packing Co. v. U.F.C.W. Local Union No. 7,* 886 F.2d 275, 276 (10th Cir.1989). The Supreme Court has held that a court must enforce an arbitrator's award as long as the award draws its essence from the collective bargaining agreement, regardless of the court's agreement or disagreement with the arbitrator's interpretation or conclusion. *United Steelworkers v. Enterprise Wheel &*

*Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

The parties "have agreed to be bound by the arbitrator's factfinding and contract interpretation whether his findings and conclusions are correct or not." *United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). As long as the arbitrator is "even *arguably* construing or applying the contract," the fact that a court is convinced the arbitrator "committed serious error does not suffice to overturn his decision." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371 *(emphasis added).*

## DISCUSSION

Courts will set aside an arbitral award as failing to draw its essence from the collective bargaining agreement in two circumstances that Kennecott argues are present here. The first occurs when an "arbitrator ignores the plain language of the contract." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371. Any question regarding the interpretation of ambiguous or conflicting provisions, however, is exclusively within the arbitrator's domain.

Kennecott argues that it had a right to terminate the Employee upon confirmation of a positive test result pursuant to the plain language of the Policy and that the effect of the Award is to impose an additional prerequisite to termination, namely, some evidence of on-the-job impairment. Arbitrator Daniels did not interpret the Policy to abrogate the requirement in the CBA that all discipline be for just cause, nor does the Policy contain any provision stating that a violation of the Policy either automatically constitutes just cause or obviates the contractual requirement of just cause.

Another court has considered the effect of language that is very similar to the language in the Policy concerning Kennecott's intention to "to take disciplinary action, up to and including termination" for violation of a drug policy. The Court of Appeals for the First Circuit enforced an award in which language permitting an employer to "discharge or oth-

---

1. It is unclear whether the misrepresentation the Employee made concerning the Employee's drug use was also a factor in Kennecott's decision to terminate.

erwise discipline" an employee for the commission of a listed offense was interpreted by an arbitrator as furnishing an employer "with a range of disciplinary options" that were "in turn subject to an independent application of the just cause barometer." *Exxon Corp. v. Esso Workers' Union, Inc.,* 118 F.3d 841, 845 (1st Cir.1997).

In doing so, the First Circuit explained, "judges have no roving writ to construe the contract language in the way they think best. Rather, a court's proper province is to determine whether the arbitrator's reading is plausible, albeit not the reading the court might choose." *Id.* Given the persuasiveness of the First Circuit's opinion and the concern expressed by Kennecott in the Policy about the "effects of alcohol and drugs," this Court cannot conclude that Arbitrator Daniels ignored the plain language of the contract or otherwise exceeded the scope of his authority.

■ A court will also set aside an arbitral award when the contract as interpreted in the award contravenes a public policy. Specifically, the contract as interpreted must violate "some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373 *(internal quotation marks and citation omitted).* Assuming such a policy can.be demonstrated, that enforcement of the award would constitute a clear violation of the policy must also be shown. *Misco,* 484 U.S. at 43–44, 108 S.Ct. at 374. The question of what public policy demands is within the judicial domain.

■ The public policy formulated by Kennecott is not sufficient to support this court's refusal to enforce the award. Kennecott asserts the existence of a public policy against the employment of·a person who has tested positive for drugs. To establish the existence of such a policy, Kennecott relies primarily on Utah's drug and alcohol testing statute. *Utah Code Ann. §§ 34–38–1 to 34–38–15.*

The statute is structured to shield from liability an employer who conducts drug testing in accordance with a written policy and in accordance with the procedures outlined in the statute. *See § 34–38–3 (it "is not unlawful for an employer to test employees or prospective employees for the presence of drugs or alcohol").* The statute permits employers to use test results as "the basis for disciplinary or rehabilitative actions" and sets forth a noninclusive list of the actions an employer may take, which include requiring the employee to enroll in a drug treatment program, suspending the employee without pay, and "other disciplinary measures in conformance with the employer's usual procedures, including any collective bargaining agreement." *Id.*

Because the statute authorizes an employer to respond to a positive drug test by taking actions less severe than termination, the statute does not demonstrate the existence of a public policy against the continued employment of an employee who has tested positive for drugs. Of course, as Kennecott has pointed out, the statute also authorizes an employer to terminate an employee who tests positive for the presence of drugs. However, this demonstrates only that Kennecott's decision to terminate the Employee did not violate public policy and would not have violated public policy if it would have been upheld by Arbitrator Daniels. It does not demonstrate that Arbitrator Daniels' interpretation of the CBA and the MOA violate public policy.

This Court acknowledges the clear public policy "against the performance of safety-sensitive jobs by persons under the influence of drugs." *Esso Workers' Union,* 118 F.3d at 849. However, this policy is not clearly violated by Arbitrator Daniels' conclusion that if Kennecott uses a test capable of detecting remote marijuana use, "there must be *some* additional evidence of on the job impairment, possession or use" (emphasis in original). This Court is not free to review Arbitrator Daniels' factual finding that there was no evidence of on-the-job use or possession.

This is not to say that Kennecott is required to· adopt a wait-and-see approach. This is only to say that if a positive test result is by itself to warrant an employee's

**1048**

termination, it does not offend public policy to require a reasonable correlation between the test and the risk of on-the-job impairment.

## CONCLUSION

Although the conclusion reached by Arbitrator Daniels may not be the same conclusion this Court would have reached, it draws its essence from the CBA and the MOA and, therefore, must be enforced. Accordingly, Kennecott's motion for summary judgment is denied and the Union's motion for summary judgment is granted, including an award of wages and benefits lost from the date of the Award (August 6, 1997), until Kennecott complies with the Award, plus prejudgment interest at the legal interest rate.