**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 57, Plaintiff,**

**v.**

**UTAH POWER AND LIGHT COMPANY, a division of Pacificorp, Defendant.**

No. Civ. 2:97–CV–00532 K.

United States District Court,
D. Utah,
Central Division.

May 21, 1998.

Arthur F. Sandack, Salt Lake City, UT, for Plaintiff.

David A. Westerby, Randall C. Allen, Kirton & McConkie, Salt Lake City, UT, for Defendant.

## ORDER

KIMBALL, District Judge.

Plaintiff International Brotherhood of Electrical Workers, Local 57, (the "Union") seeks to vacate an arbitration award on the grounds that the arbitrator exceeded the scope of his authority by upholding a Return to Work Agreement ("RWA") that mandated random drug testing and by upholding the termination of an employee who failed a random drug test administered pursuant to that RWA.

## BACKGROUND

The Union and Defendant Utah Power and Light Company (the "Company") are parties to a Collective Bargaining Agreement ("CBA") governing the conditions of employment for all non-managerial employees of the Company performing production, maintenance, and clerical work. The terms of the CBA regarding drug use and testing were defined in an interest arbitration proceeding conducted by Arbitrator William Rentfro in 1990 (the "Drug Policy"). Pursuant to the Drug Policy, testing for drugs is permissible only when reasonable suspicion exists that an employee has used or is under the influence or impaired by illegal drugs while on Company time or property. Retesting on a random basis during the following year is permissible only if an employee enters into a program of rehabilitation after first either admitting drug use or failing a drug test ordered for cause. The Drug Policy explicitly states that it does not apply to alcohol use or testing.

The arbitral award at issue upheld the Company's decision to terminate an employee (the "Grievant")[1] who failed a random drug test. The Grievant had been employed by the Company as a journeyman lineman for 18 years and had a discipline-free employment record prior to the events at issue. The Grievant was arrested and charged with driving under the influence of alcohol. He eventually plead guilty to alcohol-related reckless driving, resulting in the suspension of his commercial driver's license for 90 days.

While a commercial driver's license is a Company-imposed prerequisite for the position the Grievant held, it was not strictly necessary inasmuch as he worked on a crew that had other members who could drive.

The Grievant notified the Company of his conviction and the suspension of his driving privileges. In response, the Company issued him a Letter of Accommodation ("LOA"), which provided in pertinent part:

> The Company is willing to accommodate you for a period of ninety (90) days at your regular grade and rate of pay provided you are willing to sign a Return to Work Agreement. This ... requires you to abstain from the use of substances for a period of one (1) year and subject to random testing for the same time period.

After conferring with the Union, the Grievant signed both the LOA and the RWA. The Grievant did so with the understanding that the Union would challenge the Company's imposition of the RWA, which the Union did. The RWA expanded on the terms of the LOA by defining substance use to include the use of alcohol and illegal drugs and by explicitly providing that failure to strictly adhere to the document's terms or a test result showing continued substance use would result in discipline, up to and including discharge. Although RWAs are not negotiated directly with the Union, they are well accepted in the industry, and both LOAs and RWAs are common practice at the Company.

In February 1996, while the Union's grievance of the RWA was pending, a drug test was administered to the Grievant, who tested positive for cocaine. In March 1996, the Company terminated the Grievant for violation of the RWA. The Union then grieved his termination.

The two grievances were consolidated and submitted to arbitration. Two questions were formulated for decision: (a) did the Company violate the parties' agreements by requiring the Grievant to sign the RWA to stay in his current position and (b) did the Company

---

1. The identity of the Grievant is withheld in accordance with Utah law prohibiting the disclosure of information concerning the results of employer-administered drug tests. *See Utah Code Ann. § 34–38–13.*

**1050**

have proper cause to terminate the Grievant following the February drug test.

Among other things, the Union contended that the Grievant's termination was improper because it was based on the results of a drug test that was not permissible under the Drug Policy.

### THE ARBITRATOR'S AWARD

Arbitrator Philip Tamoush held that the Company did not violate the CBA by requiring the Grievant to sign the RWA and that the Company had proper cause to terminate him.

In a section of the award labeled "Relevant Contract Language," Arbitrator Tamoush cited the management rights provision in the CBA, which provides that:

> The supervision and control of all operations and the direction of all working forces, including the right to hire, to suspend or discharge for proper cause, or to transfer employees or to relieve employees from duty because of lack of work or other legitimate reasons, are vested exclusively in the Company. The Company retains the right to exercise discipline in the interest of good service and the proper conduct of its business.

In a section labeled; "Background and Summary of Facts," Arbitrator Tamoush refers to the Drug Policy as "the Drug/Alcohol Agreement" and explains that the document indicates that discharge may be justified when an employee relapses, as indicated by the results of a "drug/alcohol test." He also notes that the Company must consider any mitigating circumstances.

In a section labeled, "Discussion, Findings, and Conclusions," Arbitrator Tamoush set forth his findings that the Grievant's habitual use of drugs and alcohol posed a threat to the welfare of the public and the Company, that the RWA and LOA appeared to be common and normal aspects of the employment relationship, that neither document contained provisions too onerous to be ignored, and that the possibility of mitigating circumstances was not ignored. He then concluded, "To the extent that this arbitration involves an appeal of the use of the Return to Work Agreement itself by the Company, that portion of the grievance is denied."

Citing the lack of mitigating circumstances, the reasonableness of the requirements established in the RWA, and that the Grievant had violated the RWA within two months of its actual signing, Arbitrator Tamoush also upheld the discharge.

The Union filed this suit to vacate that award.

### STANDARD OF REVIEW

The judicial review of an arbitration award is "among the narrowest known to the law." *Litvak Packing Co. v. U.F.C.W., Local Union No. 7,* 886 F.2d 275, 276 (10th Cir. 1989). The Supreme Court has held that a court must enforce an arbitrator's award as long as the award draws its essence from the collective bargaining agreement, regardless of the court's agreement or disagreement with the arbitrator's interpretation or conclusion. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

The parties "have agreed to be bound by the arbitrator's fact finding and contract interpretation whether his findings and conclusions are correct or not." *United Paperworkers Int'l Union v. Misco,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). As long as the arbitrator is "even *arguably* construing or applying the contract," the fact that a court is convinced the arbitrator "committed serious error does not suffice to overturn his decision." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371 *(emphasis added).*

### DISCUSSION

One of the few circumstances in which a court will find that an award fails to draw its essence from the bargaining agreement occurs when the "arbitrator ignores the plain language of the contract." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371. The Union argues that such a circumstance is present here.

The Union claims that Arbitrator Tamoush did not apply or interpret the Drug

Policy to demonstrate that its terms were not violated by the requirement that the Grievant submit to random drug testing. The Union emphasizes that the Drug Policy explicitly delineates the circumstances under which employees may be tested and permits random drug testing only if an employee has first either admitted *drug* use or failed a *drug* test ordered for cause and that the Drug Policy contains no provision permitting random drug testing if the employee has off-duty *alcohol* problems. The Union claims that Arbitrator Tamoush effectively amended the Drug Policy to permit the Company to require an employee to submit to random drug testing on an additional basis, namely, following an off-duty alcohol-related incident.

The Union argues that Arbitrator Tamoush's reference to the Drug Policy as the "Drug/Alcohol Agreement" shows that he was under the erroneous impression that the Drug Policy applied to both drugs and alcohol and that he believed that provisions in the policy concerning drug use and testing were equally applicable in circumstances involving alcohol.

The Company argues that Arbitrator Tamoush's decision drew its essence from the parties' agreement whether he believed that the Drug Policy applied to the situation or not. If Arbitrator Tamoush believed that the Drug Policy applied to alcohol-related RWAs, then he must have concluded that the Grievant's RWA was acceptable under the Drug Policy. If he believed the policy did not apply, his decision would have been based on (a) a study of the Drug Policy to find that it does not apply, (b) a review of the management rights provision in the CBA giving the Company broad management rights for the control of operations and working forces, and (c) a review of other provisions to find that nothing prevents the Company from offering a special accommodation to an employee who had lost essential driving privileges for alcohol-related reasons.

The Company offers an additional hypothetical line of reasoning that would validate the award: Arbitrator Tamoush may have reasoned that the RWA was not specifically governed by the agreements directly negotiated with the Union and concluded that the RWA comported with the parties' agreements. In which case, he may have looked, as he actually did, to the management rights provision and the history and practice of the parties and the industry.

Without citation to authority, the Union argues that hypothetical lines of reasoning that the arbitrator may have followed to reach his decision are mere speculation and cannot be considered. The Union's position is not entirely consistent with the Supreme Court's opinion in *Misco,* which directs courts to refrain from overturning an arbitrator's decision as long as he is "even *arguably* construing or applying the contract." 484 U.S. at 38, 108 S.Ct. at 371 *(emphasis added).* Nor is it consistent with the Supreme Court's statement in *Enterprise Wheel & Car* that "ambiguity in the opinion accompanying an award, which permits the inference that an arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." 363 U.S. at 598, 80 S.Ct. at 1361; *see also Sterling Colorado Beef Co. v. U.F.C.W.,* 767 F.2d 718, 720 (10th Cir.1985) ("The Court thus will not interfere with an arbitrator's decision unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation.").

Although it seems apparent to this Court that Arbitrator Tamoush was operating under the erroneous impression that the Drug Policy had some applicability to alcohol use and abuse, that does not by itself mean the award is inconsistent with the CBA, as demonstrated by the hypothetical lines of reasoning advanced by the Company. This litigation might have been avoided if Arbitrator Tamoush would have directly addressed the question of whether the Company may include in a RWA a term concerning a matter that is subject to a negotiated agreement between the parties that is inconsistent with that negotiated agreement. However, an arbitrator is not required to set forth the basis for his decision and this Court cannot say with positive assurance that the CBA is not susceptible to Arbitrator Tamoush's conclusions.

## CONCLUSION

According, the Plaintiff's Motion for Summary Judgment is hereby denied, Defendant's Crossmotion for Summary Judgment is hereby granted, and Plaintiff's complaint is dismissed with prejudice.