**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 22 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

U.S. ENERGY CORP., a Wyoming
corporation and CRESTED
CORPORATION, d/b/a USECC, a
Colorado corporation,

      Plaintiffs-Appellees,

v.

NUKEM, INC., a New York corporation
and CYCLE RESOURCE INVESTMENT
CORP., a Delaware corporation,

      Defendants-Appellants.

Nos. 96-1532 & 97-1332
(D.C. No. 91-B-1153)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **TACHA**, and **BALDOCK**, Circuit Judges

      Defendants Nukem, Inc. (hereafter "Nukem") and Cycle Resource Investment

Corp. (hereafter "CRIC") appeal the district court's June 27, 1997, second amended

judgment confirming the arbitration panel's order and award. Defendants argue that the

---

    [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

second amended judgment (1) contains an award which was not granted by the arbitration panel and is, in the alternative, vague and ambiguous, and (2) contains a monetary award with an "evident material mistake." Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

## I.

Plaintiff USECC is a joint venture comprised of two uranium mining companies, Plaintiffs U.S. Energy Corp. and Crested Corp., which held several mining claims in Wyoming and a number of long-term contracts to supply uranium to utility companies. CRIC is a wholly-owned subsidiary of Nukem formed specifically to enter into the agreements at issue in this case. On December 21, 1988, USECC and CRIC entered into a transaction for the purpose of mining uranium in Wyoming and selling it to domestic utilities. In an asset purchase agreement, USECC agreed to sell a 50% interest in its mining claims and long-term supply contracts to CRIC. In a separate partnership agreement, USECC and CRIC each agreed to make capital contributions of their one-half interest in the mining claims and supply contracts to the new partnership, Sheep Mountain Partners (hereafter "SMP"). The partnership agreement contained an arbitration clause and required SMP to enter into independent contractor agreements with USECC to operate the mines and with CRIC to market the uranium produced. CRIC subsequently assigned its rights and duties under the marketing agreement to Nukem.

After USECC and CRIC entered into their partnership agreement, Nukem

negotiated uranium importation contracts with the Commonwealth of Independent States (herafter "CIS"), whose members include Uzbekistan, Kazakhstan and Kirgizstan. In order to prevent members of the CIS from dumping uranium in the United States at prices below fair market value, the United States had imposed a tariff in excess of 100% of the value of the imported CIS uranium. The United States, however, agreed to permit some shipment of CIS uranium into the United States without tariff if the purchaser had a long-term utility supply contract executed prior to March 5, 1992. If a supply contract met this requirement, the contract was considered "grandfathered." Acting in its own right, Nukem subsequently submitted utility supply contracts to the U.S. Department of Commerce for grandfathering. These contracts included five supply contracts[1] owned by SMP. The grandfathering of the contracts allowed Nukem to purchase CIS uranium in amounts necessary to meet the delivery requirements of those utility supply contracts. Nukem did not, however, supply the CIS uranium to SMP to satisfy the five utility supply contracts' requirements, but instead sold the uranium to other buyers. As a result, SMP purchased uranium from other suppliers at higher prices to meet its contractual obligations.

From these and other transactions, numerous disputes arose among the parties. In 1991, Plaintiffs filed this action in the district court. In 1994, the parties stipulated to

---

[1]These contracts were with Duke Power Company, Illinois Power Company, Texas Utilities Electric Company, Boston Edison, and Public Service Electric & Gas Company.

binding arbitration. The parties raised more than 33 claims before the arbitration panel.[2] One of those claims involved the CIS uranium contracts. Plaintiffs argued that by entering into CIS contracts on its own account, Nukem violated the marketing and partnership agreements. Plaintiffs also argued that Nukem improperly used the five SMP utility supply contracts to avoid the tariff on the CIS uranium.

The arbitration panel conducted a 73-day hearing and issued a written "Arbitration Order and Award" on April 18, 1996. The arbitration panel rejected the claim that Nukem violated the marketing and partnership agreements by entering into the CIS contracts. In regard to the five SMP utility supply contracts, the arbitration panel concluded that "Nukem without authority and without SMP's permission or consent used the SMP uranium supply contracts, which were partnership assets, to obtain purchase rights for CIS" uranium. The panel further found that "the uranium should have been made available to SMP to meet deliveries required by SMP's grandfathered supply contracts." As a result of Nukem's conduct, the panel impressed a constructive trust in favor of SMP over "those purchase rights, the uranium acquired pursuant to those rights and the profits therefrom . . . ." The panel also determined that as a result of Nukem's conduct regarding the five utility supply contracts, SMP suffered damages in the amount of $31,355,070 and awarded Plaintiffs, as holders of a 50% interest in SMP, half that amount or $15,677,535 plus interest.

---

[2]On appeal, Defendants allege errors pertaining only to the CIS claims.

On July 3, 1996, in response to motions by Defendants, the panel amended the arbitration award to clarify the order and correct errors. On November 4, 1996, the district court entered an order and judgment confirming the arbitration award. The district court subsequently amended the order and judgment on March 11, 1997 and June 27, 1997.

II.

We review the district court's confirmation of an arbitration award de novo. Denver & Rio Grande Western R.R. Co. v. Union Pacific R.R. Co., 119 F.3d 847, 849 (10th Cir. 1997). We review for clear error any factual findings that the district court may have made regarding its reasons for confirming, modifying or vacating the arbitration award. Id. Our review is greatly limited, however, by the deference owed to the arbitrator's decision. See ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995). The review of an arbitrator's award "is among the narrowest known to the law." Litvak Packing v. United Food & Comm. Workers Local 7, 886 F.2d 275, 276 (10th Cir. 1989). Arbitrators need not explain the reasons for the award or provide a complete record of the proceedings. See Wilko v. Swan, 346 U.S. 427, 436 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989); Eljer Mfg., Inc. v. Kowin Dev. Corp., 14 F.3d 1250, 1254 (7th Cir. 1994). If the court can find any "argument that is legally persuasive and supports the award," then it must confirm the award. Merrill Lynch, Pierce, Fenner & Smith v. Jaros,

5

70 F.3d 418, 421 (6th Cir. 1995).

In reviewing an arbitration award, we look solely to statutory requirements and a handful of judicially created requirements. See Denver & Rio Grande, 119 F.3d at 849. The Federal Arbitration Act allows a court to vacate an arbitration award in very limited circumstances including "where the award was procured by corruption, fraud, or undue means" or "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a). The Act also permits a district court to modify or correct an "evident material" miscalculation or mistake in an arbitration award. See 9 U.S.C. § 11(a). In addition, we have held that errors in the arbitrator's "interpretation of the law or findings of fact do not merit reversal" unless they rise to a "manifest disregard of the law." Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co., Inc., 22 F.3d 1010, 1012 (10th Cir. 1994). Manifest disregard means "willful inattentiveness to the governing law," and clearly requires more than mere error or misunderstanding of the law. ARW Exploration, 45 F.3d at 1463. With these limitations in mind, we proceed to the merits of the appeal.

## A.

Defendants argue that the district court erred in imposing a constructive trust as part of the second amended order and judgment. Defendants do not attack the arbitrator's award directly, but instead argue that the district court should not have included this relief in the second amended order and judgment because it was not authorized by the arbitration panel's award. In other words, Defendants assert that the relief ordered by the

district court exceeded the relief granted by the arbitration panel.

The district court's original and first amended judgments did not contain a constructive trust. On June 26, 1997, the district court entered an order granting USECC's motion to correct clerical omissions in the March 11, 1997 amended judgment. The order stated that "through an oversight, the March 3, 1997 Order and Amended Judgment entered on March 11, 1997, did not contain the equitable award contained in paragraph 163." As a result, on June 27, 1997, the district court entered a second amended judgment which included the constructive trust described in Paragraph 163 of the arbitration award.

Paragraph 163 of the original arbitration award provided as follows:

"Since the rights to purchase CIS uranium were obtained through the use of SMP contracts (partnership assets), those purchase rights, the uranium acquired pursuant to those rights and the profits therefrom are impressed with a constructive trust in favor of SMP. The uranium should have been made available to SMP to meet deliveries required by SMP's grandfathered supply contracts. We enter awards for those profits denied to the partnership, together with statutory interest at 8% per annum. . . . Total: $31,355,070."

Discounting the explicit language in this paragraph impressing a constructive trust, Defendants argue that the panel did not mean to impress a constructive trust. Instead, they argue that the panel merely used equitable principles to explain its analysis. Thus, according to Defendants, after the panel concluded that SMP held the contracts for the equitable benefit of the partnership, the panel reduced the award to $31,355,070 in damages and did not establish a constructive trust over the proceeds of the five

7

grandfathered supply contracts.

Prior to the district court's entry of the second amended judgment, Defendants argued before the arbitration panel, in a motion to correct inconsistency and error, that the imposition of a constructive trust coupled with the $31,355,070 award of damages for lost profits was inconsistent. The arbitration panel rejected this argument, and on July 3, 1996, clarified Paragraph 163 as follows:

> Since the rights to purchase CIS uranium were obtained through the use of SMP contracts (partnership assets), those purchase rights, the uranium acquired pursuant to those rights and the profits therefrom are impressed with a constructive trust in favor of SMP, and we conclude that SMP is entitled to damages in the amount of $31,355,070 to compensate it for its past and future lost profits. The uranium should have been made available to SMP to meet deliveries required by SMP's grandfathered supply contracts. We enter awards for those past and future profits denied to the partnership, together with statutory interest at 8% per annum. The relevant amounts are as follows:

> | Contract | Present Value to June 30, 1995 |
> | --- | --- |
> | Duke Power | $ 5,543,433 |
> | IPC | $11,834,232 |
> | TUCO | $ 2,779,727 |
> | BECO | $ 2,298,050 |
> | PSF&G | $ 8,899,628 |
> | Total: | $31,355,070 |

Amended Paragraph 163 clearly retains both a constructive trust _and_ a damage award.[3]

---

[3]Although Defendants argue in their opening brief that the panel, in the amended arbitration award, "explained . . . that there was no constructive trust, only a monetary award [in paragraph 163]" we find no such statements in the July 3, 1996, arbitration

Assuming that the arbitration panel erred by impressing a constructive trust and awarding damages, we cannot reverse an arbitration panel's "erroneous interpretations or applications of law." ARW Exploration, 45 F.3d at 1463. We may only reverse the panel's award if it evidences a "manifest disregard" of the law. Id. The arbitration panel's decision to impress a constructive trust and award damages is not "willful inattentiveness to the governing law." See Id. at 1463 (holding that neither incorrect application of statute of limitations nor incorrect classification of joint venture interests as "securities" under federal law rise to a manifest disregard of the law). Thus, we will not disturb the arbitration award on this ground.

B.

Alternatively, Defendants argue that the district court's judgment imposing the constructive trust is vague and ambiguous. The second amended judgment provides that "pursuant to paragraph 163 of Arbitrators' Order No. 1, as modified by Arbitrators' Order No. 2, the rights to purchase CIS uranium, the uranium acquired pursuant to those rights, and the profits therefrom are IMPRESSED WITH A CONSTRUCTIVE TRUST in favor of SMP . . . ." Defendants argue that this language creates a trust of "indeterminable corpus" and must be set aside. We disagree. Amended paragraph 163 explains that the purchase rights, uranium, and profits acquired through Nukem's use of SMP's five utility supply contracts were impressed with a constructive trust. Paragraphs 160 and 163 of the

order.

9

arbitration award list the five grandfathered supply contracts: Duke, IPC, TUCO, BECO, and PSF&G. When read in conjunction with the arbitration order and award, the district court's judgment is clear and unambiguous. The judgment impresses the trust "pursuant to paragraph 163" of the arbitration order, incorporating language identifying the proceeds from the five grandfathered SMP supply contracts as the corpus of the constructive trust.

## C.

Defendants also assert that the district court failed to correct an "evident material mistake" in the arbitration award. Defendants argue that the arbitration panel should have offset the $31,355,070 in lost profits by the amount of actual profits earned and received by SMP on the grandfathered contracts. The arbitration panel's award compensated SMP for the profits it lost when Nukem wrongfully failed to provide it with the lower-cost CIS uranium. Defendants contend that the panel arrived at the $31,355,070 damage award by taking the projected CIS price at the time of delivery and subtracting it from the actual price paid by the utilities to determine the profit denied to SMP. According to Defendants, SMP made substantial profits when it delivered non-CIS uranium to the grandfathered suppliers. These profits, Defendants assert, were not deducted from the damage award. Without this offset, Defendants argue that the monetary award contains an impermissible double recovery.

The Federal Arbitration Act authorizes a district court to modify or correct an

10

"evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to" in an arbitration award. See 9 U.S.C. § 11(a). A court may not modify or correct an award pursuant to § 11 if it would affect the merits of the controversy. See 9 U.S.C. § 11(c).

The arbitration panel considered and rejected the exact argument Defendants now assert, concluding in the July 3, 1996, arbitration order that there was "no double recovery and no subtraction that ought to be made from the profits already realized by the Partnership [SMP] under those [supply] contracts." The panel explained that "[a]ny profits already received by [Plaintiffs and Defendants] from the five contracts belong to them as partners. Any profits past or future derived from the importation of uranium from the Commonwealth of Independent States (CIS) based on the grandfathering of these five contracts belong to [Plaintiffs and Defendants] as partners. The profits do not belong to Nukem alone." Thus, it appears that the panel did not deduct the previously obtained profits that SMP received on the five supply contracts from the damage award because Nukem, along with Plaintiffs, shared in those profits as partners in SMP. The panel also emphasized that the damage award was premised upon Nukem's wrongdoing and in their judgment, Nukem "ought not to be permitted to profit from that wrongful conduct."

11

We find no evident material miscalculation[4] on the face of the arbitrators' award. The arbitration panel, after considering Defendants' arguments, clearly stated that there was no mistake. In other words, the panel meant what it said. Moreover, even if the panel's logic for using gross profits is flawed, the arbitrators' damages calculation does not evince a "manifest disregard of the law." A mistake of fact or misinterpretation of law is not enough to warrant reversal. See Bowles, 22 F.3d at 1012. We may not substitute our judgment for that of the arbitrators, see Foster v. Turley, 808 F.2d 38, 42 (10th Cir. 1986), nor may we "instruct the arbitrator as to the correct computation of damages." ARW Exploration, 45 F.3d at 1463. Consequently, we will not disturb the arbitrators' award of damages.[5]

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge

---

[4]Although Defendants disingenuously assert that they do not challenge the panel's calculation of damages, we fail to see how Defendants' argument that the amount of damages is incorrect does not constitute such a challenge.

[5]Plaintiffs' motion for sanctions is denied.